(76 South. 65)

KIDD et al. v. BROWNE. (7 Div. 835.)

(Supreme Court of Alabama. May 24, 1917.)

1. ADVERSE POSSESSION ⊂⊃55—CONTINUITY OF POSSESSION—DISABILITY AFTER ACCRUAL OF CAUSE—DEATH OF TESTATOR.

Where possession was adverse against a testator at his death, it did not cease to be so as against his devisees regardless of their age or condition, since after the statute of limitations begins to run it continues, although subsequent disabilities may arise.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 272–275.]

2. ADVERSE POSSESSION ⊂⊃114(1)—SUFFICIENCY OF EVIDENCE.

Evidence *held* sufficient to show that complainant's predecessor had acquired title to lands by adverse possession and had treated the land in every respect as the owner thereof.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683.]

3. ADVERSE POSSESSION ⊂⊃33—NOTORIETY OF CLAIM—EVIDENCE—REPUTATION.

Proof that land was known and spoken of in the community as belonging to claimant would be evidence of the notoriety of his claim of ownership, although it would not be evidence of title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 134, 135.]

4. ADVERSE POSSESSION ⊂⊃70—NECESSITY OF ORIGINAL TITLE.

Adverse possession does not depend upon original or documentary title, but concedes that

the possession in its inception was wrong and not right.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 394–414.]

5. ADVERSE POSSESSION ⊂⊃19, 21—NECESSITY OF INCLOSURE OR CULTIVATION.

It is not necessary that land be inclosed or cultivated, because capable of being so done, to constitute adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 99–105, 109, 110.]

6. ADVERSE POSSESSION ⊂⊃13—ELEMENTS.

The elements of title by adverse possession are such possession as the land reasonably admits of, openness, notoriety, and exclusiveness, hostility towards everybody else in respect to the possession, claim of right or claim or color of title, and continuity for 10 years, as prescribed by the statute.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 67–76.]

7. ADVERSE POSSESSION ⊂⊃68—COLOR OF TITLE—TRANSFER BY WILL.

It was immaterial that the first holder by adverse possession had no color of title where those who claimed under him had color of title through the first holder's will, since if the first holder had acquired title adversely, it passed by his will.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 387–393.]

8. ADVERSE POSSESSION ⊂⊃106(1)—PRESCRIPTION—WHAT CONSTITUTES.

The lapse of 20 years without recognition of right or admission of liability operates an absolute rule of repose or prescription.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 604, 619–623.]

9. ADVERSE POSSESSION ⊂⊃104 — PRESCRIPTION—DEFEATING PRESUMPTION OF GRANT.

The presumption of a grant arising from prescription will not be defeated by infancy, coverture, or other personal disabilities, nor its operation suspended by causes which have been legally adjudged to suspend the running of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 595–602.]

10. LIFE ESTATES ⊂⊃8—PRESCRIPTION — REVERSION AND REMAINDER.

The doctrine of prescription does not apply to estates in reversion or remainder in which the adverse holding has its inception and its continuance during existence of a preceding estate for life or years, because title thus acquired is from the preceding estate, and is of necessity in recognition of that estate.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 24–28.]

11. ADVERSE POSSESSION ⊂⊃60(2)—PRESCRIPTION—PROPERTY SUBJECT TO.

The doctrine of prescription does not apply to cases where the possession is permissive or in recognition of title, since such possession is not adverse, but is that of the holder of the title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 283, 284.]

Appeal from Shelby County Court; E. S. Lyman, Judge.

Bill by Cecil Browne against James M. Kidd and others, to quiet title to land. Decree for complainant and respondents appeal. Affirmed.

The copy of the will attached as Exhibit A to said answer is as follows:

"I, John W. Kidd, of the county of Shelby, state of Alabama, of sound mind and memory, though advanced in age, and mindful of the

uncertainty of life, do make and publish this my last will and testament.

"And, first: I commend my soul to God, who gave it, and my body to the dust, to be buried as my friends may choose, in a Christian way and manner.

"Second: I desire that all my just debts and funeral expenses be paid out of any money which may be on hand at my death, or out of the first means which may come to the hands of my executors out of my estate.

"Third: Whereas I have, in the providence of God, been twice married and have children by each marriage; my first children have all left me, and have, by way of advancement, received a part of my estate hereinafter more particularly set forth, and I have by deed heretofore conveyed to my beloved wife, Mary Georgiana, and my children by her, through John M. Kidd and William Singleton, trustees, and in that deed given to said trustees power and authority to demand of my executors such legacy or bequest as I might, in my will, give to my said beloved wife and children in said deed mentioned, now, hereby ratifying and confirming said deed, and as the bequests therein alluded to, I hereby give and bequeath unto my said beloved wife whatever real estate 1 may die seised and possessed of situated in Shelby county, and four mules and one horse to be selected by said John M. Kidd and William Singleton out of my stock of mules and horses at my death; four cows and calves, thirty hogs selected in like manner and four beds and furniture to be selected by my said wife, and direct that my executors convey to said trustees said land if any such be owned by me at my death, and deliver to them all the above mentioned property for the use of my beloved wife Mary Georgiana and her children William Douglas, James White and Anna Philida, during the natural life of my said beloved wife, and at her death to our children forever. I also give to my beloved wife one buggy and harness and wagon.

"Fourth: I have heretofore given to my children as follows: to my daughter Harriett Mc-Graw to the value of $4,987.00; to my daughter Marle Johnson to the value of $3374.00; to my daughter Louisa Gashell $2820.00; to my son Albert J. Kidd to the value of $4235.00; to my son Wilson H. Kidd to the value of $5-512.00; to my son John M. Kidd to the value of $2840.00; and design in my lifetime, in my own way, to make my said children equal as to said advancements. Now it is my desire that my entire estate, not above bequeathed, of which I may die seised and possessed, be equally divided among my said sons and daughters mentioned in this section, and here enjoin it upon my executors hereinafter appointed to divide my said property so left after taking out the foregoing specific bequests so as, first, if I, in my lifetime, shall have failed to equalize said advance, then to equalize said advances, and then divide said remainder equally between my sons and daughters named in this fourth section of this my will, who may be living at my death, and to the children of such as are or may be dead, the share of their dead parents.

"Fifth: I hereby appoint my sons Wilson M. Kidd and John M. Kidd, my executors of this my last will and testament, and hereby convey to them and invest them or such of them as may qualify, with full power to do all things necessary to carry out this my last will and testament; and I now publish this as my last will and testament in the presence of this 8th day of November, 1858.                John M. Kidd.
"Wm. H. Hannah
"R. L. Flippin
"Filed for record the 24th day of October, 1865, and recorded the 17th day of August, 1866.        N. B. Mardis, Judge of Probate."

The trust deed referred to in said will, and also in said answer, a copy of which is thereto attached, is in words and figures as follows:

"This indenture, made and entered into this 8th day of November, in the year of our Lord 1858, between John W. Kidd, of the first part, and John M. Kidd and William Singleton, of the second part, all of the county of Shelby, state of Alabama; witnesseth: That, whereas, the said John W. Kidd, the party of the first part, has been twice married and has children by each marriage; that his children by his first marriage are all grown up and left him, and he has, by way of advancement, given off to them a considerable portion of his estate, and is desirous to secure to his present wife and children by her, now, for and in consideration of the love and affection which the said party of the first part has and bears for his present wife, Mary Georgiana Kidd, and my sons by said beloved wife, William Douglas, James White, and daughter Anna, Philida, and the further consideration of five dollars by the parties of the second part to me, the party of the first part, in hand paid, the receipt whereof is hereby acknowledged, the said party of the first part has sold and does hereby sell and convey unto the said parties of the second part the following described lands and property, to wit: All of my home tract of land lying near and adjoining the town of Harpersville, and embracing section 32 in township 19 and range 2 east, except a small portion sold off as town lots and the graveyard, and forty acres in section 4 and forty acres in section 5, and 76 acres in section 28, and 76 acres in section 33; all in township 20, range 2 east; my entire home tract, containing eight hundred and sixty acres; and the following named negro slaves, to wit: a negro woman Martha, about 30 years old, and her five children: William, about eleven years old, Martha, about eight years old, Elbert, about six years old, Sallie, about four years old, and Smith, about three years old. Also, Mark, a man about thirty years old, and Early, about seventeen years old; and Charles, about fifteen years old, and Franklin, about 20 years old, and Josiah, about twenty-two years old, and Emma, about sixteen years old, and Elijah, about sixty years old. To have and to hold in trust as follows; to wit: In trust for the use, support and maintenance of said beloved wife Mary Georgiana and children William Douglas, James White and Anna Philida, during the natural life of my said wife, remainder after her death in absolute right to my said children above named, and in the event my said wife should have any other child or children by her present marriage, that such child or children born of my said wife by her present marriage, that it or they be made equal with my children above mentioned in said property, but in no event said property or any part thereof to go to any future husband, should my said beloved wife have such future husband, or to the children of such future husband, so as however not to restrain her of the use of the said property during her natural life. In further trust that I be permitted to retain the use of said land and negroes during my natural life. I also hereby authorize and empower the said parties of the second part, and in the event they or either of them should die, resign this trust, or be otherwise removed from the trust herein created, their successors to demand and recover of my executors any legacy or bequest which I may give to my beloved wife and children above named in my last will and testament, and when received of my executors or administrators to be held by said trustees for my said wife in the same manner and under the same trust as above provided.
"Attest:  R. L. Flippin.        "John W. Kidd.
        "S. Leeper.

"The State of Alabama, Shelby County.

"Personally came before me ———, a justice of the peace within and for said county, John W. Kidd, well known to me, who being duly informed of the contents of the foregoing deed, acknowledged that he voluntarily signed, sealed and delivered the same on the day the same bears date, for the purposes therein expressed, and I further certify that the said John W. Kidd is the identical person who signed the same.

"Given under my hand this 8th day of November, 1858.     Wm. M. Hannah.

"Filed this 9th day of Nov. 1858, and recorded the same day.

"J. M. McClanahan, Judge of Probate, S. C.

"Filed Oct. 23, 1913."

Riddle & Ellis, of Columbiana, and Jas. M. Kidd, of Birmingham, for appellants. Browne, Leeper & Koenig, of Columbiana. and Harrison & Welch, of Talladega, for appellee.

MAYFIELD, J.     Appellee filed this, his bill to quiet title, as is authorized by statute. Code, §§ 5443–5449. Appellants answered, setting up title or claim to the lands in question through a will and trust deed executed by John W. Kidd in 1858, by which the testator devised the lands to his wife and his children by her, thereby creating two estates, one, an estate to his wife and her children during the life of the wife, and one, a remainder in fee to the children after her death. The reporter will set out the will and trust deed.

The will and deed have been heretofore three times before this court for construction. See Kidd v. Borum, 181 Ala. 144, 61 South. 100, Ann. Cas. 1915C, 1226, Cruse v. Kidd, 195 Ala. 22, 70 South. 166, and Kidd v. Cruse, 76 South. 59.[1] The result of these several decisions is the holding, that the will passed title to the wife and her children as above indicated—that is, a life estate to the wife, and an estate to her children during her life—thus making them tenants in common of the estate for the life of the wife, and the children the takers of the remainder in fee after her death, that the trust created by the will or deed of trust was a mere naked or passive trust, constituting simply a repository or a conduit for the legal title, and that by virtue of our statutes (Code, §§ 3408, 3409) the legal title passed to the beneficiaries named in the will, and so passed, even though the executors or trustees named in the will, or others, never executed conveyances as provided; and that there was no merger of the estate for the life of the wife, into the remainder in fee, in such sort as that the title in remainder and in fee could be defeated by adverse possession during the existence and continuance of the life estate. The reasons and the authorities upon which we were led to these conclusions are stated in the opinions on the former appeals, above referred to; and no good purpose can be here served by repeating them. We have been shown no good reason for departing from the holding in the last of these

[1] Ante, p. 293.

cases, which modified the opinion, but not the decision, in the case of Cruse et al. v. Kidd, 195 Ala. 22, 70 South. 166.     We, therefore, now reaffirm what was said on the appeal of Kidd v. Cruse et al., as to the proper construction of the will and trust deed.     It, therefore, results that the appellants in this case, under the undisputed facts, have title to the land in question, unless the title has been diverted, cut off, or defeated, by adverse possession.     The sole basis of complainant's (appellee's) claim of title is that the land was acquired by him, and those through whom he claims title by adverse possession, from John W. Kidd or those claiming under him by the will and trust deed to which we have referred.

The record indisputably showed that the testator once had title, and that it passed by the will, unless cut off or prevented from so passing by virtue of adverse possession, on the part of complainant's predecessors in claim.

Complainant's claim of title is that one J. V. McGraw, a son-in-law of the testator through marriage with a daughter of testator by a former wife, and who was not one of the devisees mentioned in the will, but one who had been otherwise provided for, by way of advancements, entered upon, took possession of, and inclosed the land in question, and claimed it as his own and adversely to John W. Kidd, the true owner; that he so took possession long before the death of John W. Kidd, and that he held it for a sufficient length of time to defeat Kidd's title before the latter's death, but, if not for sufficient length of time, before Kidd's death, to acquire title, that the same possession continued, after Kidd's death, until title was acquired by McGraw, later passing by his will to A. W. McGraw, by power of attorney from A. W. McGraw to A. E. McGraw, by deed to Alfred Austell, thence by will to Letitia Fitch for life, and at her death to her children; and from those by deed and judicial sales to Cecil Browne, complainant.

The evidence in the case on the issue of adverse possession is very voluminous. The complainant contends, and the trial court found, that J. V. McGraw acquired title to the land in question by adverse possession, irrespective of any question as to a proper construction of the will of John W. Kidd.

The questions of adverse possession in this case are, of course, entirely different from what they were, in the other appeals involving the will and trust deed. In those cases the adverse possession had its inception, and chief continuance, after the death of John W. Kidd, the testator, and during the existence of the life estate. Here the adverse possession began, if at all, before the death of the testator, and the statute was therefore started to running against him, and, under some phases of the testimony, had completed the bar, before the death of the testator, and, therefore before the creation of any life

estate or remainder, which was done solely by the will of John W. Kidd. Under this latter theory, of course, no title passed by the will to either a life estate or a remainder.

[1] If the bar was not perfected for lack of time before the death of the testator, the possession is shown to have continued, without any break, for a sufficient length of time to' perfect the bar, provided the possession was of the character, and embraced the necessary elements, to make it adverse. If the possession was adverse against John W. Kidd at his death, it did not cease to be so, against the devisees · of either the life estate or the remainder attempted to be created by the will. Once the statute of limitations begins to run, it continues to run, although subsequent disabilities may arise. If the statute begins to run against one in his life tenure, his death does not suspend the running, though his heirs be infants or lunatics, who cannot sue; nor can he suspend the statute by devising the lands or property to infants, or by creating life estates and remainders as to such property. The heirs or devisees are in no better position than the ancestor or testator would have been in had he lived; if he would be barred, then the heirs or devisees will be barred, no matter what their age or condition may be, or what estate they acquired. Doe v. Thorp, 8 Ala. 253; Smith v. Roberts, 62 Ala. 83; Daniel v. Day, 51 Ala. 431; 1 Rul. Case Law, p. 744; Sutton v. Clark, 59 S. C. 440, 38 S. E. 150, 82 Am. St. Rep. 855, and note.

[2, 3] We agree with the trial judge that this evidence shows that J. V. McGraw was in the open, notorious, exclusive, and adverse possession of the land in question at the time of his death, which occurred in 1867, and that he had so held the land for more than 10 years next preceding, and that the title was therefore divested out of John W. Kidd during his lifetime, and vested in J. V. McGraw. We feel that there can be no doubt that J. V. McGraw had the possession and control of all the land in question. It was inclosed with fences by him, and much of it was cultivated by him or his tenants, who built houses on parts of it; and it was assessed for taxes by him. There is lacking no act which an owner would exercise over his own land, situated as was this land; in fact, the proof shows that it was treated by him just as he treated other adjoining land owned by him, and that for years and years—both before and after the death of both J. V. McGraw and John W. Kidd—this land was known, and spoken of, in the community as the land of McGraw. This is not, of course, evidence of title, but it is evidence of his claim of ownership, and of the notoriety of his claim, and to show notice on the part of Kidd and those claiming under him of the claim of McGraw. McGraw disposed of this land by his will just as he did of other lands, owned by him, as to title of which there is no question. Another circumstance is that McGraw, for many years prior to his death, assessed the land for taxes, while Kidd, in his lifetime, and those claiming under his will did not assess it or make claim thereto. While McGraw was the son-in-law of Kidd, and appellants claim and insist that McGraw's possession was permissive, and not adverse, yet we fail to find evidence sufficient to show that it was permissive, and are convinced, on the contrary, that McGraw's possession was adverse. His various acts in fencing and cultivating the land, building houses thereon, and assessing it for taxes, for 15 years before his death, taken in connection with Kidd's failure to so assess during this time, or otherwise to claim, cannot be explained on the theory that the possession was permissive and not adverse. While, of course, there is a conflict in the evidence as to some of the possessory acts—such as clearing and fencing the land, and building houses thereon—and as to the exact locations of the fences, houses, etc., and when the acts were done, yet this is nothing more than natural to expect, where so many witnesses are examined, and where the acts and facts to which they testify occurred more than a half century ago; and in the light of the whole evidence we feel no doubt that J. V. McGraw acquired title to this land by adverse possession during his lifetime and the lifetime of John W. Kidd. The conduct of both, as to this land, cannot be otherwise explained.

It is true no deed or attempted conveyance is shown, or offered to be shown, whereby Kidd conveyed, or attempted to convey, to McGraw, nor is it claimed that McGraw ever had any color of title to the land in question; but it is shown that he had the actual possession and control of all, for more than 10 years next before his death and during the last 10 years of the life of John W. Kidd.

[4] Adverse possession does not depend or rely upon an original title; it relies on no documentary title; it concedes that the possession was wrong, and not right, in its inception. State v. Conner, 69 Ala. 212.

[5] It is not necessary that land be inclosed or cultivated, because capable of being so done, to constitute adverse possession. The kind of possession is determined by the condition of the land, not with reference to its being changed into another state, but to its then present state. Openness, notoriety, and exclusiveness are shown by acts which at the time, considering the state of the land, comport with ownership, such as would ordinarily be done by an owner for his own use, and for the exclusion of others. Goodson v. Brothers, 111 Ala. 589, 20 South. 443.

[6] The elements of such a title are: (1) Such possession as the land reasonably admits of; (2) openness and notoriety and exclusiveness of possession; (3) hostility towards everybody else in respect of the possession; (4) holding the possession under a claim of right or claim or color of title; and

(5) continuity for the statutory period of 10 years. Goodson v. Brothers, supra.

To the Constitution of the first element—such possession as the land reasonably admits of—it is not necessary that land which is uninclosed and uncultivated should be inclosed and cultivated merely because it was capable of inclosure and cultivation. The possession is gauged by the actual state of the land, and not with reference to its capability of being changed into another state which would reasonably admit of a different character of possession. Openness and notoriety and exclusiveness of possession are shown by such acts in respect of the land in its condition at the time as comport with ownership, such acts as would ordinarily be performed by the true owner in appropriating the land or its avails to his own use, and in preventing others from the use of it as far as reasonably practicable; and near akin to these are the acts evidencing the element of hostility towards all the world.

[7] Every one of the above elements is shown to have been in J. V. McGraw's possession, except that he had no color of title; but those who have claimed and held this land through him since his death have had color of title, if not paper title. If McGraw had acquired title by adverse possession, then, of course, it passed by his will.

The character of the possession of those claiming under J. V. McGraw since his death is not now, and never was, different from that of J. V. McGraw during his life and during the life of John W. Kidd. This condition of possession and occupancy of this land has continued without a break, or a claim against the title of J. V. McGraw, for more than half a century; his title was never questioned by John W. Kidd or his devisees, or by any one else until shortly before this suit was brought. To us, the conclusion is irresistible that the possession of J. V. McGraw, beginning in the '40's or '50's and continuing uninterruptedly until his death in the latter part of the '60's, followed by that of his successors, continuing until the present time, was and is adverse. This possession, beginning, as it did, during the lifetime of John W. Kidd, and there being nothing to show or indicate that it was permissive or in recognition of Kidd's title, except the fact of the relation by affinity, and that no deed or writing is shown by which the title passed, or was intended to be passed, must have been adverse; else some other circumstance would appear, to show the contrary.

Aside from the statute of limitations, intended for the repose of society and of civil rights, the doctrine of prescription is here applicable, and impels us to hold that J. V. McGraw and his successors acquired title.

[8] This court has adhered, with uniform tenacity, to the doctrine of prescription, and has repeatedly held that the lapse of 20 years, without recognition of right, or admission of liability, operates an absolute rule of repose. McArthur v. Carrie, 32 Ala. 88, 70 Am. Dec. 529 (leading case); Semple v. Glenn, 91 Ala. 245, 6 South. 46, 9 South. 265, 24 Am. St. Rep. 894.

The doctrine is broader and more comprehensive than a mere statute of limitations, although based on analogous principles of repose to society. Garrett v. Garrett, 69 Ala. 429; McArthur v. Carrie, supra; Harrison v. Heflin, 54 Ala. 552; Greenlees v. Greenlees, 62 Ala. 330; Baker v. Prewitt, 64 Ala. 551; Matthews v. McDade, 72 Ala. 377; Bozeman v. Bozeman, 82 Ala. 389, 2 South. 732.

[9] After 30 or 40 years of uninterrupted possession it is permissible to invoke the rule of prescription in favor of a due execution of sale, and of the regularity and validity of a conveyance, sufficient in law to pass the estate and title of the grantor. 72 Ala. 377; Doe v. Ladd, 77 Ala. 235.

"Twenty years is a period of time beyond which the courts are not disposed to permit past human transactions to be disturbed by judicial investigation. 32 Ala. 75, 70 Am. Dec. 529; 69 Ala. 429; 64 Ala. 551. In Sims v. Aughtery, 4 Strob. Eq. (S. C.) 103, the following language was used by the Supreme Court of South Carolina: 'Twenty years' continued possession will raise the presumption of a grant from the state of deeds, wills, administrations, sales, partitions, decrees, and * * * of almost anything that may be necessary to the quieting of title, which no one has disturbed during all that period.' 32 Ala. 83–91, 70 Am. Dec. 529. And this court has held that this presumption will not be defeated by infancy, coverture, or other personal disabilities. McCartney v. Bone, 40 Ala. 536; 69 Ala. 429. Nor will its operation be suspended by causes which have been legally adjudged to suspend the running of statutes of limitation. 54 Ala. 552; 72 Ala. 388; Jordan v. McClure Co., 170 Ala. 316, 54 South. 423."

In Alabama, as in most of the states, there is a growing disposition to fix a period, beyond which human transactions shall not be open to judicial investigation, even in cases for which no statutory limitation has been provided. This period is sometimes longer and sometimes shorter, dependent on the nature of the property and the character of the transaction. By common consent, 20 years' time has been agreed on as the period after which many of the most solemn transactions will be presumed to be settled and closed. See 2 Story's Eq. 1028b.

[10] This doctrine does not apply, of course, to estates in reversion or remainder, in which the adverse holding has its inception and its continuance during the existence of a preceding life estate or an estate for years, because the title thus acquired is from the preceding estate, and is of necessity in recognition of the estate in reversion or remainder.

[11] Nor does it apply to cases in which the possession is permissive or in recognition of the title; it is then not adverse, and the possession is that of the holder of the title—not against or adverse to his title.

We, therefore, fully agree with the conclusion and decree of the trial court, that the

respondents (appellants here) showed no title to the land in controversy, and the decree of the lower court is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, and THOMAS, JJ., concur.