42 So.2d 454

### REDDEN v. OTWELL et al.
### 7 Div. 988.

Supreme Court of Alabama.
Oct. 20, 1949.

654

Miller & Pittman, of Gadsden, for appel-
lees.

Geo. D. Motley, Sr., of Gadsden, for ap-
pellant.

STAKELY, Justice.

This is an appeal from a final decree determining a disputed boundary line between coterminous tracts of land. Section 2, Title 47, Code of 1940; § 129, Title 13, Code of 1940. The bill was filed by W. F. Redden (appellant) against C. O. Otwell and others (appellees).

The disputed line is the boundary line between the land of complainant which may be briefly described as Tract No. 3 consisting of 14.2 acres in Etowah County, Alabama, according to map or survey of the Mann Estate made by W. B. Robards, civil engineer, under date of April 2, 1923, as recorded in Book of Town Plats "B" at page 364 in the office of the Judge of Probate of Etowah County, Alabama, and lots of the respondents which are described as lot 1 and lots 4 through 49, inclusive, in Block I in Meadow Grove Subdivision in Etowah County, Alabama, as recorded in Book of Town Plats C at p. 395 in the office of the Judge of Probate of Etowah County, Alabama.

It will be noted that the complainant is the owner of a tract of land described as Tract No. 3 according to a map or survey of the Mann Estate made by W. B. Robards, civil engineer. This map or survey contains Tract No. 4, which adjoins Tract No. 3 on the south. The complainant purchased Tract No. 3 in about 1928. From 1926 to 1928 the respondent Mrs. A. Cambron Howard, then Mrs. A. A. Cambron and her deceased husband J. R. Cambron, were tenants on Tract No. 4. On February 1, 1928, the said respondent and her husband entered into a contract of sale of Tract No. 4 and lived continuously thereon until his death and she thereafter until November 1943, at which time pursuant to the contract the Manns executed a deed to Mrs. A. Cambron Howard, then a widow, for Tract No. 4.

In 1944 Mrs. A. Cambron Howard caused a survey to be made of Tract No. 4 by T. L. Simmons, a surveyor. A map or plat known as Meadow Grove Subdivision was drafted and then adopted by Mrs. A. Cambron Howard. Since that time, with the exception of Lot. No. 1, she has sold and conveyed all the lots in the Meadow Grove Subdivision. The Meadow Grove Subdivision adjoins Tract No. 3 on the south side of Tract No. 3. The lots were purchased and are now owned by the various other respondents.

On October 9, 1948, the complainant had a survey made by Ernest Lee, a surveyor, of Tract No. 3 of the Mann Estate. According to his testimony he found a discrepancy in the line which forms the south boundary line of Tract No. 3 and the north boundary line of Tract No. 4. Further according to his testimony the Simmons Survey encroaches upon the complainant's property 14½ feet on the east boundary and about 2 feet on the west end. The result is that the area in dispute is a strip of land somewhat triangular in shape starting from a point on the west side of the property facing a street designated as Central Avenue. The Lee survey shows the disputed boundary line as traveling in a northeasterly direction to the east boundary of both tracts while the Simmons survey shows the disputed boundary as traveling in a southeasterly direction to the east boundary of these tracts. In short the two different surveys form a strip 2 feet in width on the west end and 14½ feet in width at the east end. The respondents claim and the court found that the true boundary line is the northerly line of the. lots in Block 1 of the Meadow Grove Subdivision, as shown by the Simmons survey.

██ The surveyor who platted the Meadow Grove Subdivision recognized that the title for the respondents was based on reference to the Robard map or plat, while the surveyor employed by the complain-

ant went back and before the Robard map or plat and did not make reference to the Robard map or plat in arriving at the line which he fixed as the south boundary line of Tract No. 3 and the north boundary line of Tract No. 4. Both surveyors appear to be competent and on their surveys alone decision might be difficult. But taking all the evidence together we think it supports the correctness of the Simmons survey and the finding of the lower court. Stansell v. Tharp et al., 245 Ala. 270, 16 So.2d 857. The surveyor, T. L. Simmons, could of course give his opinion, as he did, that his survey was correct. Pennington v. Mixon, 199 Ala. 74, 74 So. 238. The supporting testimony, which we shall discuss, may be summarized as showing (1) permanent markers or monuments already on the ground when T. L. Simmons made his survey and (2) adverse possession by the owner of Tract No. 4 and her successors in title to the boundary line fixed by the Simmons survey.

■ There was evidence by the surveyor T. L. Simmons, by Mrs. A. Cambron Howard and other respondents that there were iron pins running along the line established by T. L. Simmons which are permanent markers and monuments and that there are other pins and monuments by which those running along the boundary line could be ascertained by a competent surveyor. The boundary line can be fixed by such permanent markers or monuments. Baldwin v. Harrelson et al., 229 Ala. 469, 158 So. 416; Smith v. Simmons, 228 Ala. 393, 153 So. 633.

■ Tendencies of the evidence also showed the following. A fence was erected for pasture purposes in 1928 by J. R. Cambron, now deceased, the former husband of Mrs. A. Cambron Howard and by the husband of the complainant. J. R. Cambron, deceased, was the brother of the complainant. At that time the fence was not on the dividing line between Tract No. 3 and Tract No. 4. In about 1930 by mutual consent the original fence was moved and placed along the boundary line between Tract No. 3 and Tract No. 4 and was kept up for a number of years. Fence posts and parts of the fence, as moved, still remain. The fact that part of the fence is no longer standing has little weight against the claim of the respondents. Doe ex dem. Hughes v. Anderson, 79 Ala. 209. Mrs. A. Cambron Howard has occupied and claimed to own the property up to the line of the relocated fence under color of title, the contract of sale, Alabama State Land Co. v. Matthews, 168 Ala. 200, 53 So. 174, and the deed from the Manns from 1930 to 1944, when portions of the property were sold. During this time she assessed and paid the taxes on the tract of land. Her possession was hostile under claim of right, actual, open notorious, exclusive and continuous. Chastang v. Chastang, 141 Ala. 451, 37 So. 799, 109 Am.St. Rep. 45. There was no dispute as to the property line until 1944 and no legal action taken until this suit was filed in June 1947, a period of about 17 years. The purchasers of the lots from Mrs. A. Cambron Howard testified as to the location of the fence and that they claimed and occupied the lots back to the fence line. This testimony, if accepted, would have the effect to fix the line of the relocated fence as the boundary line. Smith v. Cook, 220 Ala. 338, 124 So. 898; Branyon v. Kirk, 238 Ala. 321, 191 So. 345; § 3, Title 47, Code of 1940.

■ As pointed out the court fixed the true boundary line between the property of complainant and the property of the respondents as the northerly boundary line of lot 1 and lots 4 through 49 inclusive of the Meadow Grove Subdivision. It is argued that the court was in error in not appointing a competent surveyor to make a survey of the line. But section 4, Title 47, Code of 1940, with respect to the court's appointment of a surveyor, is directory and not mandatory. Whitlow v. Moore, 246 Ala. 472, 21 So.2d 253. Under the facts in this case we think that an additional survey is unnecessary and accordingly the additional expense would not be justified.

The decree of the lower court is affirmed.

Affirmed.

BROWN, FOSTER, LIVINGSTON, LAWSON and SIMPSON, JJ., concur.