69 So.2d 866

## MONTEITH v. CHAPMAN.

### 8 Div. 639.

Supreme Court of Alabama.

Jan. 14, 1954.

. McDonnell & Jones, Sheffield, for appellant.

Patrick B. Harris and Kirk & Rather, Tuscumbia, for appellee.

SIMPSON, Justice.

The appellee and the appellant are coterminous landowners in the city of Tuscumbia, each, according to their record title, owning one-half of lot numbered 160. The appellee filed a bill in equity to settle and determine a boundary line dispute. From the decree of the trial court finding that the appellee acquired title by adverse possession to all that portion of lot 160 lying south of a line where an old fence stood, the appellant has appealed. The pertinent recital in the decree reads as follows:

"The pivotal issue of fact is the location of an old fence between the approximate north half and the approximate south half of Lot 160 in the City of Tuscumbia, Alabama. The Court finds from the testimony that from the conveyances of record, the complainant and the respondent respectively own one-half of said Lot 160, but that many years ago the complainant and her predecessors in title established an old fence in the vicinity of a line which would divide the north and south halves of said lot; further the old fence has been removed for several years, but it appears to the Court, and the Court does so find from the testimony that the complainant, Chapman, acquired title by more than twenty years adverse possession to all that portion of Lot 160 lying south of line where the old fence stood."

On the evidence it appears that all of lot 160 was once owned by one Ernest Troy. In 1894 Mr. Keys, father of appellee and predecessor in title, purchased the south half of the lot from Troy. From the time of his purchase in 1894 until the date of his death in 1913 Keys occupied this lot as residence property. Upon the death of her father, the appellee inherited an interest in the lot and subsequently purchased the interest of the other heirs; she has since that time occupied the lot as her home. Keys, as early as 1894, or his predecessors, had theretofore built a fence on the north side of his property, extending the entire length of the lot. This fence was maintained until approximately 1914 when a portion of this old fence at the front was removed and replaced by a wire fence. The front portion of the later fence was removed in 1917. There was

no evidence, however, that this was due to any question as to the boundary line between the lots, but on the contrary all the evidence pointed to the conclusion that it was done because of a fashion change in the neighborhood. When Mrs. Monteith, the appellant, purchased the north one-half of lot 160 the only portion of the fence still standing was that part of it in the back yard, but that portion of the fence which is presently in the back of the property is in the same location and is a part of the old fence which was there as early as 1900. The appellee's evidence further tended to show that the appellee and her predecessor in title had occupied and used the property in the back yard as a garden and planted flowers, shrubs, and grass in the front yard up to the line where the fence stood. Other witnesses, residents of and familiar with the neighborhood, also testified that the fence was the dividing line between the two properties. There was little or no evidence of any claim or complaint as to the possession of the appellee or her predecessor in title by any one until the appellant undertook to enter upon and build a fence thereon in 1950, although the appellant purchased that portion of said lot lying north of the line where the old fence stood in 1927. Of some import also is the fact that after the appellant purchased her part of the lot, she built a barn on the north side of the fence but was careful to erect same on the north side, close to the old fence, so as not to extend over the line of appellee's property.

When one of two adjoining landowners erects a fence as the dividing line and holds actual and exclusive possession to it as such, his possession is hostile. Guy v. Lancaster, 250 Ala. 226, 34 So.2d 10; Brantley v. Helton, 224 Ala. 93, 139 So. 283; Smith v. Cook, 220 Ala. 338, 124 So. 898.

Openness, notoriety and exclusiveness are shown by acts which at the time, considering the state of the land, comport with ownership, i. e., such act as would ordinarily be done by an owner in appropriating the land to his own use and to the exclusion of others. Kidd v. Browne, 200 Ala. 299, 76 So. 65. Those possessory acts by the appellee and her predecessor— gardening and planting up to the fence— and the absence of any acts of possession by the appellant, would, upon a consideration of the state of the land, sufficiently meet the requirements of this test.

It is argued that the line as fixed by the trial court (sixty inches north of the northernmost arrow mark cut into the sidewalk by the appellant's surveyor) is not supported by the evidence. Here also, however, we find ourselves in disagreement with learned counsel. In determining the location of the old fence, the trial court in its decree found the boundary line to be on a straight line with an old fence post. There was evidence that the fence post was a part of the original old fence, and a straight line extended westwardly from the old post would be the true line as claimed by the appellee and as determined by the trial court in its decree. There was evidence also that if the appellant claimed all the land lying north of the northernmost arrow, the area in dispute would be five feet. A witness for the appellant testified that said arrow was located at a point in close proximity to a pecan tree stump; appellee's husband testified that the pecan tree stump was five feet south of the line made by the old fence; clearly, therefore, a point five feet north of said arrow—the line determined by the trial court—is supported by the aforementioned testimony. Counsel for appellant gives much weight to a statement by the appellee that the pecan tree stump was "I imagine about two feet—not very far" south of the line made by the old fence. In other parts of the appellee's testimony, however, she indicated that the fence line was in fact five feet north of the northernmost arrow, thereby justifying the conclusion of the trial court on the issue.

We cannot say that the decree determining the boundary line was palpably erroneous or against the great weight of the ev--

idence and must therefore sustain it. Crawford **v.** Tucker, 258 Ala. 658, 64 So. 2d 411(7).

Affirmed.

LIVINGSTON, C. J., and GOODWYN and CLAYTON, JJ., concur.