94 So.2d 763

**W. T. SMITH LUMBER COMPANY**

**v.**

**Ralph COBB.**

3 Div. 787.

Supreme Court of Alabama.

April 25, 1957.

Edwin C. Page, Jr., Evergreen, for appellant.

Ralph L. Jones, Monroeville, for appellee.

**148**

SIMPSON, Justice.

Complainant brought this suit pursuant to the provisions of § 3, Title 47, Code of 1940, to determine the boundary line between itself and respondent, coterminous landowners. The trial court established as the true line that claimed by the respondent, and complainant appeals.

It is first contended by complainant, appellant, that the trial court erred in refusing, on its motion, to order a survey of the lines as provided by § 10, Title 47, Code of 1940. Complainant offered to deposit with the register the money necessary to defray the expenses of the survey. The argument is untenable. The statute provides that a survey may be ordered when "it appears that such survey is pertinent * * * or is essential to the proper entering of a decree * * *."

■ It is not mandatory but merely directory that the court order a survey. Redden v. Otwell, 252 Ala. 653, 42 So.2d 454; Stansell v. Tharp, 245 Ala. 270, 16 So. 2d 857. In the instant case the court was singularly correct in not ordering a survey inasmuch as the court concluded in favor of a well marked line claimed by the re-

spondent as the true line on the theory of adverse possession. No good purpose, therefore, would have been served by establishing boundary lines in accordance with the government survey or muniments of title.

■ The other and main insistence of the appellant is that the evidence was insufficient to establish in the respondent title to the disputed area by adverse possession. The case was submitted to the trial court on depositions so it will be considered de novo by this court. 2A Ala.Dig., Appeal and Error, ☞ 931(1) e., p. 248 et seq.

On a considerate study of the record in the light of the cases governing, we have concluded that the decree below was well founded. Following is a brief recital of the evidence as disclosed by the record: The respondent owned the W. ½ of the NW ¼ of Section 1, Township 8 North, Range 10 East. The complainant owned the E. ½ of the NW ¼ of said Section and the South ½ of the SW ¼ of Section 36, Township 9 North, Range 10 West. The lines in dispute were those on the East and North of the respondent and on the West and South of the complainant. Otherwise stated, the lumber company, appellant, owned the land immediately North and East of the 80 acres owned by the appellee. The disputed lines separated these coterminous tracts. The respondent, Cobb, acquired title to his land from his mother and father by warranty deed dated January 3, 1939. This deed which was filed for record January 7, 1939, conveyed about 400 acres of which the above described 80 acres was a part. Within about 15 days after the date of said deed, the respondent employed a competent and licensed surveyor to survey and mark his lines. This surveying was accomplished within a day or so. The survey lines were clearly marked with three hacks on the trees and these line marks were plainly evident when the testimony in the case was taken about 15 years thereafter. Re-

spondent, intending to use some of this land as a pasture, began fencing it immediately after the survey. He constructed a substantial fence on the line of the survey using mulberry, chestnut and oak posts. Along the North line of the 80 acres four strands of barbed wire were used, and this continued down on the East side of the survey line until about 150 or 200 yards before reaching the SE corner of the 80 when these wires were joined by a net wire fence extending down to the SE corner. This fence covered the entire boundary line in dispute and was erected and maintained by the respondent as a boundary line fence. One McNeil, a witness for complainant who was at the time and had been for a long period prior thereto, a woods rider or land agent for the complainant, testified that he found this surveyed line between the time the surveyor ran it and the time the fence was built; that he knew Mr. Cobb put the fence along the line of the blazes, and that it was his opinion at the time the fence was built that Mr. Cobb erected it as a boundary line fence. This fence was completed prior to February 25, 1939. Immediately after the erection of the fence, respondent began pasturing the land. Some cows he owned individually and some jointly with one Hardee. During the 8 or 9 years while the pasturing of these lands continued, he visited them about 2 or 3 times weekly. Although respondent took his cattle out of the pasture in 1944, his brother and Hardee continued to run cattle in the pasture as tenants of respondent until 1950, when he sold the timber on the land and it was cut and it became then necessary to move the cattle due to the timbering operations. In 1940 a storm blew down some trees on the property and he either logged the storm timber himself or had others to come in and help him do so. Some of this storm timber fell on the fence and tore it down, and the respondent immediately repaired it. In about 1948 or 1949 respondent sold the timber on the property to McGowin Lumber Company, at which time he showed the purchaser the

lines up to the fence as the boundary of his property. The lumber company put sawmills on the land, put roads through it, and cut up to the fence. All of this was very obvious possession of the land up to the fence under the respondent's claim. For about 5 years after the respondent purchased this property he farmed about 18 acres of the tract, which, of course, was also some evidence of his possession of the property. This character of possession was maintained by the respondent continuously from his purchase of the property in 1939 until the suit in this case was filed in 1950. The complainant sought to show by several surveyors that the respondent's fence was not on the true boundary line but enclosed a portion of its land on both the South and West side. These witnesses, however, testified that they had run out the disputed line and that it was a difficult boundary to establish, and that boundary lines in this area were uncertain. The land along the disputed area was woodland with some undergrowth. The property was suitable for pasture and timbering rather than cultivation. The respondent testified that he erected this fence as a boundary line fence and at one point ran the fence along the East boundary of an old public road so as to leave it open to the public even though it was in the boundary of his survey.

■ The law governing the case is well understood. When one of two adjoining landowners erects a fence as the dividing line and holds actual and exclusive possession to it as such, his possession is adverse and if continued for ten years ripens into title. Isaacks v. Clayton, 254 Ala. 450, 48 So.2d 536; Monteith v. Chapman, 260 Ala. 206, 69 So.2d 866; Guy v. Lancaster, 250 Ala. 226, 34 So.2d 10; Smith v. Cook, 220 Ala. 338, 124 So. 898.

■ Openness, notoriety and exclusiveness are shown by acts which at the time, considering the state of the land comport with ownership, viz., such acts as would ordinarily be exercised by an owner in ap-

**150**

propriating the land to his own use and to the exclusion of others. Monteith v. Chapman, supra; Kidd v. Browne, 200 Ala. 299, 76 So. 65.

And all acts of a possessory nature committed by the adverse claimant are to be considered collectively rather than independently in determining the sufficiency of his possession. Chastang v. Chastang, 141 Ala. 451, 37 So. 799; 2 C.J.S. Adverse Possession § 29.

We entertain the view that, considering the nature and character of the land, the possessory acts of the appellee detailed above and the absence of any acts of possession or claim of ownership by the appellant until after the expiration of the ten year period, sufficiently met the test of the authorities.

We hold, therefore, that the trial court ruled correctly in establishing the line claimed by the appellee as the boundary line between the parties.

True, the original government survey lines are permanent markings and may not be changed, but by adverse possession or valid agreement a boundary line between two tracts may be established so that the government survey will no longer control. Godsey v. Anglin, 261 Ala. 19, 73 So.2d 92, and cases cited.

It would be impracticable and serve no useful purpose to attempt to differentiate this case from those relied upon by the appellant. Each case must be ruled by its own particular facts. We might observe, however, that the cases cited by appellant are different factually in some material respects from the one at bar, such as a lack of showing of an intent to claim adverse possession or merely desultory acts of possession, or a difference in character of topography of the land involved, etc.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.