265 So.2d 866

**Alfred H. JAMES et al.**

**v.**

**Bonard MIZELL.**

**John F. OWENS et al.**

**v.**

**Elmer FULLER.**

**Gerald FULLER, etc., et al.**

**v.**

**Elmer FULLER.**

**8 Div. 444.**

Supreme Court of Alabama.

Aug. 3, 1972.

Bingham D. Edwards, Decatur, W. H. Rogers, Moulton, for appellants.

Ralph E. Slate, Decatur, for appellees.

HARWOOD, Justice.

This is an appeal from a decree of the Circuit Court of Lawrence County, in Equity, rendered in a boundary line dispute among several coterminous landowners. The Chancellor found the boundary line to be an old fence line as contended by the respondents, who are appellees here, rather than a line shown by a survey made in 1968 at the instance of the complainants.

The litigation was initially brought in three separate cases which were subsequently consolidated, since the three cases involved the same issues.

All of the property here in dispute was originally owned by Lonnie Fuller, deceased.

The complainants, who are the appellants here, consist of Erma Fuller, the widow of Lonnie Fuller; Gerald Fuller, son of Lonnie Fuller, who sued both as administrator of the estate of Lonnie Fuller, deceased, and in his individual capacity as an heir of Lonnie Fuller; Betty Fuller Owens, a daughter and heir of Lonnie Fuller, deceased, and her husband, John F. Owens, who together own a separate portion of the land in dispute, and Rachel Fuller James, another daughter and heir of Lonnie Fuller, deceased, and her husband, Alfred H.

James, who also own together a portion of the land in dispute.

It also appears that John F. Owens, and Alfred H. James, above mentioned, had also acquired some individual interests in the land in dispute.

Elmer Fuller, and Bonard Mizell, were the respondents in the proceedings below and are the appellees here. Elmer Fuller acquired a portion of the land on the south side of the disputed line by purchase from Lonnie Fuller in 1933. Elmer sold a portion of the land thus acquired which eventually was purchased by Bonard Mizell, hence Mizell's status as a respondent.

Much of the testimony of various witnesses, many of whom are pecuniarily interested in the outcome of the suit, is in hopeless conflict. For example, although the evidence is undisputed that Lonnie and Elmer Fuller had a boundary line fence built in 1959, the testimony is in conflict regarding whether, prior to 1959, an older fence existed in its place. The testimony of certain witnesses indicates a fence did exist at the exact line upon which the new fence was built. There is testimony to the effect that a fence was there for 48 years. Other witnesses, whose interests coincide with appellants' position, insist there was never a fence prior to 1959. However, some of these witnesses concede that parts of a fence had been in the general vicinity of the old fence, and also, that the new fence was put up generally where the old fence had been. Other witnesses claim they had never seen a fence until one was built in 1959.

Another disputed factual issue centers around a hedgerow, consisting of bushes and vines, which was present prior to 1959. According to some of the witnesses, the old fence ran down the middle of this hedgerow. This hedgerow was cleaned up with the use of a bulldozer in 1958. Both Lonnie Fuller, who was then living, and Elmer Fuller, paid to have the hedgerow cleared off and the new fence built. The factual question concerns not only whether

an old fence had stood in this hedgerow prior to 1959, but also whether the new fence was put exactly where the old fence had existed in the hedgerow. Testimony was given pro and con on this issue.

A third factual dispute concerns whether the appellee, Elmer Fuller, cultivated or used the land up to the hedgerow and the old fence (assuming there was an old fence). Appellants contend Elmer Fuller had not cultivated the land up to where the new fence now stands for ten consecutive years as required by the adverse possession statute. Title 7, § 828, Code of Alabama 1940. Appellants assert that the disputed land was not used continuously, openly, exclusively, and hostilely, for a ten year period. They contend the fence was built in 1959, and this litigation began nine years later in 1968. Some of the testimony indicates Elmer never cultivated up to the location of the present fence until 1959. Contrary testimony tends to show cultivation of the land and its use as a pasture prior to 1959. Other testimony tends to show that Lonnie Fuller never cultivated south of where the new fence is now, though this contention is likewise disputed by other testimony.

In rendering a decree for the respondents-appellees, the Chancellor found:

"The Court, after considering the evidence, is of the opinion that the boundary line separating that property hereinabove described * * * belonging to the complainants (appellants) and coterminous with respondents' (appellees') property is that certain fence which the Court finds has been in existence many years * * *" (Par. ours.)

Subsequent to the rendition of this decree, the Chancellor denied appellants' motion for a rehearing.

Appellants set out numerous assignments of error in their various briefs. These assignments, in effect, raise three points of alleged error. First, that the decree was contrary to the preponderance of the evidence. Second, that appellees failed to maintain exclusive, continuous, and hostile possession up to the fence line and hence of the disputed strip, for ten years. Third, the Chancellor admitted allegedly illegal evidence.

First, the Chancellor found that the present fence was the boundary line and that a prior fence had existed on this line for many years. Appellees' evidence showed the old fence had been there since 1933, and some witnesses testified it had been there much longer. Appellants take the position that this finding was contrary to the preponderance of the evidence.

In McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160, the rules pertaining to disputes between coterminous owners relative to a mutual boundary line are stated as follows:

"It is established that: If two coterminous proprietors agree on a boundary line, and each occupies to its location, the possession is presumed adverse, and after ten years has the effect of fixing such line as the true one. Turner v. De Priest, 205 Ala. 313, 87 So. 370; Copeland v. Warren, 214 Ala. 150, 107 So. 94; Gunn v. Parsons, 213 Ala. 217, 104 So. 390; Mink v. Whitfield, 218 Ala. 334, 118 So. 559; Smith v. Harbaugh, 216 Ala. 202, 112 So. 914. If a coterminous landowner holds actual possession of the disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken." (Citations omitted.)

In the court below, the burden of proof was upon the appellees to show adverse possession against the record title holders. Thus, the appellees had to establish the existence of a boundary line which was separate and distinct from the surveyed line, and that they occupied up to the location of this line. Appellees offered

substantial testimony to verify the presence of a fence between Elmer and Lonnie Fuller at least as far back as 1933. Thus, a question of fact was presented which was within the province of the Chancellor to resolve. T. R. Miller Mill Co. v. Ralls, 280 Ala. 253, 192 So.2d 706.

In the instant case, there also was sufficient evidence to show that an old fence had been on the same line where the new fence was built. Therefore a question was presented for the finder of facts, i. e., the trial judge. The trial judge found that a fence had been at this location for a considerable length of time. This court, on appeal, must now accord a presumption in favor of the factual findings of the Chancellor who saw and heard the witnesses. Ex parte State ex rel. Grace, 224 Ala. 273, 139 So. 288; Sharp v. Elliotsville Cumberland Presbyterian Church, 280 Ala. 266, 192 So.2d 718; Hale v. Hale, 259 Ala. 666, 68 So.2d 63.

There was adequate testimony indicating that the division line had been present much longer that the minimal ten year requirement for adverse possession, which together with the evidence of adverse possession by the appellees, precludes our finding that the decree was contrary to the preponderance of the evidence. See Isaacks v. Clayton, 254 Ala. 450, 48 So.2d 536; McLester Bldg. Co. v. Upchurch, 180 Ala. 23, 60 So. 173.

The long period of acquiescence and acceptance of the old and then the new fence by appellants or their predecessors in title, together with appellees' evidence of possession, further precludes their right to successfully deny appellees' claim of right to the disputed strip.

The appellants cannot now assert and maintain in equity a different division line after this long acquiescence, by the previous owners and by themselves for nine years, of the old (division line) as the true one, with possession by them in accordance therewith. Turner v. De Priest, 205 Ala.

313, 87 So. 370. See also Whitlow v. Moore, 246 Ala. 472, 21 So.2d 253; Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423.

The second ground for error urged by appellants concerns the alleged failure of the appellees to maintain exclusive, continuous, and hostile possession up to the fence line for ten consecutive years. The basic premise of this argument is the supposed lack of "actual" use of the land up to the fence line. Appellants concede that the land has been continually and exclusively used by appellees since 1959 when the new fence was erected. This covers a period of about nine years. Therefore the issue, in effect, is with regard to the utilization of the land up to the line prior to 1959. Appellees presented testimony showing some amount of cultivation up to the fence line from time to time prior to 1959, though the hedgerow was mainly not affected. It would be unreasonable to require a landowner to actually use continuously all the land within the bounds of his fence line. The existence of a hedgerow is actually a use of the land.

In Moorer v. Malone, 248 Ala. 76, 26 So.2d 558, this court explained what is necessary to constitute "actual" possession of land:

"To constitute an actual possession of land it is only necessary to put it to such use or exercise such dominion over it as in its present state it is reasonably adapted to. Alabama State Land Co. v. Matthews, 168 Ala. 200, 53 So. 174, 175."

In W. T. Smith Lumber Co. v. Cobb, 266 Ala. 146, 94 So.2d 763, we discussed what acts would deem a landowner to be in control of a disputed strip of land:

"The law governing the case is well understood. When one of two adjoining landowners erects a fence as the dividing line and holds actual and exclusive possession to it as such, his possession is adverse and if continued for ten years ripens into title. Isaacks v. Clayton, 254 Ala. 450, 48 So.2d 536; Monteith v.

Chapman, 260 Ala. 206, 69 So.2d 866; Guy v. Lancaster, 250 Ala. 226, 34 So.2d 10; Smith v. Cook, 220 Ala. 338, 124 So. 898.

"Openness, notoriety and exclusiveness are *shown by acts which at the time, considering the state of the land comport with ownership, viz., such acts as would ordinarily be exercised by an owner in appropriating the land to his own use and to the exclusion of others.* Monteith v. Chapman, supra; Kidd v. Browne, 200 Ala. 299, 76 So. 65." (Emphasis ours.)

█ Upon considering the use of the disputed strip by the appellees, assessed in the light of Moorer v. Malone, and W. T. Smith Lumber Co. v. Cobb, supra, we hold that presence of the fence, as found by the Chancellor, coupled with the normal acts of use and appropriation of the land by the appellees or their predecessors in title, was a sufficient exercise of dominion over the land.

We next consider the assignment of error relative to the action of the court in denying the motion of the appellant to exclude a portion of an answer given by the appellee Elmer Fuller during his direct examination.

Elmer had testified that when he first bought his land in 1933, he and Lonnie Fuller's land adjoined, and a fence running east and west separated their respective tracts. At this time it was a barbed wire fence nailed mostly to posts. He cultivated his land south of this fence, and Lonnie cultivated his land to the fence on the north side.

Both he and Lonnie got jobs in "public work" and they let the fence go down, but even in 1959 the wire and some of the old posts were there. A hedgerow had grown up on each side of the fence.

The record then shows the following:

"Q. Was there any wire nailed to any trees?

"A. Yes, me and Lonnie quit using posts and went to using bushes and things, and in the fall of the year when we worked on this fence, I would go down there and work on some and Lonnie would go down there and work on some. We nailed anything that was there."

Counsel for appellants then moved to exclude from the answer the statements "me and Lonnie quit using posts," and, as stated by counsel, "we worked on this in the fall." The grounds of the motion were that the answer was violative of Section 433, Title 7, Code of Alabama 1940 (Dead Man's Statute), providing that no person having a pecuniary interest in the result of a suit can be allowed to testify against the party to whom his interest is opposed, as to any transaction with any deceased person whose estate is interested in the result of the suit.

█ The estate of Lonnie Fuller was an interested party in this suit. It would also appear that the statements in Elmer's answer which appellants moved to exclude, constituted a personal transaction between Elmer and Lonnie Fuller, and the inferences from such answers were that Lonnie by his acts had acquiesced or consented to the location of the fence as a boundary line between his and Elmer's land. We think that the Chancellor erred in denying appellants' motion to exclude those parts of Elmer's answer as pointed out in the motion to exclude.

Nevertheless, we are unwilling to reverse this judgment because of this ruling. The issue of the location of the fence was the subject of much testimony. Elmer himself, prior to the portions of his answer now being considered, had testified as to the existence of the fence, and the manner in which he and Lonnie had cultivated their respective lands up to the fence.

Coy Gray, a disinterested party, testified that in 1958 he had bulldozed the hedgerow for Elmer and Lonnie Fuller. Each had paid half of the costs of the bulldozing.

An old barbed wire fence ran about in the middle of the hedgerow. He understood the purpose of bulldozing the hedgerow was to build a new fence. There was an old sweetgum about the middle of the hedgerow near one end of the hedgerow. Stains on it showed that wire had been attached. The old fence ran in a line from this tree. Lonnie Fuller, the deceased, told Gray not to push this tree over, that "they" had always used this tree "for the line."

It seems unlikely that in light of the volume of testimony heard by the Chancellor on this issue, that we would be justified in concluding that the appellants were probably injured in any substantial right because of the ruling now in question. We will not therefore reverse this decree because of this erroneous ruling. Supreme Court Rule 45.

Appellants' assignment of error No. 40 asserts as error the ruling of the Chancellor in admitting into evidence over appellants' objections appellees' Exhibit No. 2.

This exhibit is a plat of fifty-two hundredths of an acre bordering Bonard Mizell's land on the north. It purports to be certified by a registered engineer. This exhibit was introduced in evidence through Bonard Mizell, who identified the plat as representing the land sold by Mr. and Mrs. Richards to Mr. and Mrs. James. In Mizell's judgment the plat was a correct representation of the fifty-two hundredths acre of land.

The appellants had previously introduced in evidence a deed of the fifty-two hundredths acre from James Alton Richards to Alfred H. James and Rachel James. The tract of land conveyed by the deed is described by metes and bounds. It would appear therefore that the plat related to a matter not in dispute.

■ ■ Further, a diagram or drawing may be used by a witness to make more clear his testimony. If the witness testifies to the correctness of a map or diagram, whether made by himself or by someone else, and has personal knowledge of the matter depicted, such matters furnish a sufficient predicate for the admission of the map or plat. It is not necessary that the authenticity of the plat be first established by the cartographer or author of the plat or map. Cooper v. State, 274 Ala. 683, 151 So.2d 399. No merit therefore attaches to assignment of error No. 40.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and McCALL, JJ., concur.