268 So.2d 17

Dan TILL et al.

v.

Gertrude TILL et al.

3 Div. 505.

Supreme Court of Alabama.

Sept. 28, 1972.

Rehearing Denied Nov. 9, 1972.

John A. Taber, W. J. Williamson, Fred A. Scott, Greenville, for appellants; John S. Andrews, Greenville, Guardian ad litem for Vernell Fussell, appellant.

Calvin Poole and William Hamilton, Greenville, for appellee Gertrude Till.

MADDOX, Justice.

This is a will contest case. Contestants-complainants-appellants, are nieces, nephews, great-nieces or great-nephews of the testator, Joseph H. Till, deceased. The respondent-proponent-appellee, Gertrude Till, is the wife of a cousin of the deceased, Joseph A. Till. The contestants claimed the last will and testament was the result of undue influence exercised by Gertrude Till on the testator, or in the alternative, that at the time of the execution of the will, Joseph A. Till was of unsound mind.

The case was tried before a jury in Butler County, which returned a verdict finding the issues in favor of Gertrude Till. Appellant's motion for new trial being denied, this appeal was taken.

There are several assignments of error; however, the assignments argued are predicated upon the refusal of the trial court to give certain requested written charges, and the refusal of the court to permit evi-

dence concerning the activity of the husband of Gertrude Till, who was the principal beneficiary. Appellants insist strongest that they discovered new evidence that Gertrude Till had written two letters which proved she exercised undue influence upon the testator and that the testator was of unsound mind.

Joseph A. Till died in Butler County in July, 1970. He was 87. He had never married. During his lifetime, he acquired considerable real and personal property. He left a last will and testament dated March 5, 1966, which is the will here contested. Apparently, the deceased was not very close to any of his next of kin. After the death of his parents, he and his maiden sister lived in the family home until the death of his sister in 1948. The testator had entered into an arrangement with one Will Burgan to run his farming operations. For a time, Will Burgan lived in the home with the testator. In 1960, apparently Joseph Till executed his first will, naming Will Burgan as a beneficiary. In 1964, the testator revoked this will and made another will in which Burgan's share of his estate was more than doubled.

There was evidence that Burgan began to mistreat the testator and that one of the contestants, Dan Till, talked to Ben Till, husband of Gertrude Till, on several occasions about getting the will naming Burgan as a principal beneficiary revoked. Ben Till was deceased at the time of the trial.

The evidence is uncontradicted that the deceased testator lived in the home of Ben and Gertrude Till from October, 1965 until the date of his death. The testimony was conflicting on the question of the mental capacity of Joseph A. Till at the time the will here was signed. Several witnesses described the testator as "confused a great deal of the time" and "irrational." A doctor who had treated the deceased for "arteriosclerosis" was of the opinion that the deceased was of "unsound mind." Witnesses stated that the deceased's physical and mental condition deteriorated after an illness in 1958. On the contrary, a doctor who treated the deceased testified that, in his opinion, Joseph Till was of sound mind on some occasions when he talked to him and on others he was not. One of the witnesses to the will testified that the testator appeared to be of sound mind at the time the will was executed. Other witnesses also testified that the deceased was of sound mind while he was in the Ben Till home. A provision in the will stated:

"I am leaving my property to Gertrude Till because she has taken me into her home and been kind to me in my old age. I want her to have my property when I am gone."

Contestants presented evidence attempting to show that the testator had ill feeling for Ben Till, in whose home he lived for the more than four last years of his life. In other words, as is generally true in will contest cases, the evidence was bitterly contested, the trial lasting for five days.

No principle of law is more settled than the rule announced in Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738 (1890), as follows:

"When there is no evidence to support the verdict, it is clearly the duty of the court to grant a new trial. No court, possessed of a proper sense of justice, and a due regard for a fair and impartial administration of the law, can afford to allow such a verdict to stand. But when there is evidence on both sides, or some evidence to support the verdict, it should not be set aside, because it may not correspond with the opinion of the court, as to the weight of the testimony, or because it is against the mere preponderance of the evidence. Comparing the analogous rules above stated, and the rules established by other appellate courts, we deduce therefrom, and lay down as rules for the guidance of this court, that the decision of the trial court, refusing to grant a new trial

on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. And decisions granting new trials will not be reversed, unless the evidence plainly and palpably supports the verdict. Of course, these rules are not inflexible; but subject to exceptions and qualifications, dependent upon peculiar circumstances."

■ When a motion for a new trial is denied by the trial court, the refusal of the trial court to grant a new trial adds verity to the propriety of the verdict and thereby strengthens the presumption in its favor. 2A Ala. Digest, Appeal and Error, ☜930 (1).

Appellants, by amendment to their motion for a new trial, alleged that they had "newly discovered evidence." The "newly discovered evidence" is based on two letters written by Gertrude Till to Mrs. Ruby Till, wife of Ellis Till, one of the contestants of the will.[1]

Forest Investment Corp. v. Commercial Credit Corp., 271 Ala. 8, 122 So.2d 131 (1960), sets out many of the guiding principles regarding the granting of a new

1. "Wed. morn.
"Dearest Ruby:
"They are going to have a hearing Sat. morn. 9 o'clock. Will Burgans is having Mr. Joe to move Williard. Ruby Will Burgan has Mr. Joe just like you see on T.V. He does or says anything Will says. If the heirs and people don't do something all you will be left out because Will Burgan is a dirty crook & Scott the lawer is feasting on Mr. Joe's money. He is as dirty as Will. Will Burgan's been toating Mr. Joe's bank keys for a bout a year that we know. Mr. Joe is not capable of attending to his own business. You all should see a lawyer because Scot wants him to stay as is so he can get his money. When Ben Jr. lived up there every day he acted like he was crazy about Will Burgan and every night he get in his room and curss Mr. Will say "Will Burgan you big Sun of a Batch I aint scared of you. He'd do that and rave for a long time every night saying the same thing. Williards wife told Mildred that Mr. Williard came upon him beating Mr. Joe once. Will Burgan has told lies on Mr. Joe but Mr. Joe is so scared of him he will do or say anything Will says do.
"If you could petition Mr. Joe to Tuscaloosa for 30 days tear up the will run Will Burgan off appoint Dan business adm. Then get Williard or any one you like to take Mr. Joe as a child and attend to him good the rest of his life.
"If they'd keep him in Tuscaloosa 1 mo. and listen to him talk to himself they find out he is out of his right mind and he does need a decent person over his business. If it were my family we get together & a lawer and do something. Get rid of Will befoe he does worse.

"Everybody thinks Will don't want anyone around so they can't catch up with what he does.
                    "S/ Love,
                    "S/ Gert"

*       *       *       *       *

"Dear Ruby
"After you left I told Cousin Joe you said you wished he had got you and Ellis to come live in the house with him instead of Will Burgan. He laughed said I didn't think you could get them out of Montgomery down here. He said well I couldn't have had a better place than I have got no matter where I'd went. He said Loanie & Comer build a chimney at South end of their house for me to live with them but I couldn't stay down there. He said they couldn't been no better than I've got no how. He said I love to stay here it a mighty good place to stay. So we begin to try to get him to will Ellis, the 80 acres use to belong to Cousin Johnny. We intended if he give it to us to give it to Cousin Johnny's children. But Ben said if the other airs try to break the will maybe Ellis could hold it better than we could and he could divide it up or sell it and divide the money with the others. He hasn't consented yet but I think maby he will with all the brain washing Ben and I give him about it. You can't tell what he will do he sometimes talk like he wants us to have everything he has but as I said You can't ever tell. So keep your fingers crossed & don't tell no one what I said about brain washing they'd get it rong. I haven't ask him to will us nothing he just likes us.
                    "Love,
                    "S/Gert"

trial on the ground of "newly discovered evidence." This court there said:

"Appellant's final contention is that the motion for a new trial should have been granted on the ground of newly discovered evidence.

"The propriety of granting such a motion on the ground of newly discovered evidence must, in this State, be tested by the following settled rules:

"(1) The evidence must be such as will probably change the result if a new trial is granted;

"(2) The evidence must have been discovered since the trial;

"(3) The evidence could not have been discovered before the trial by the exercise of due diligence;

"(4) It must be material to the issue;

"(5) It must not be merely cumulative, or impeaching. McCormack Bros. Motor Car Co. v. Arnold, 223 Ala. 504, 137 So. 288; Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45; Birmingham Electric Co. v. Linn, 33 Ala.App. 486, 34 So.2d 715."

\* \* \* \* \* \*

"The granting or denying of a motion for a new trial on the ground of newly discovered evidence rests largely in the trial court's discretion, and its order will not be reversed on appeal unless it is made to appear that the order violated some legal right of appellant or there was an abuse of discretion; the presumption being that the discretion was properly exercised. Birmingham Electric Co. v. Toner, 251 Ala. 414, 37 So.2d 584; Foster v. Rosamond, 28 Ala.App. 99, 180 So. 334."

The jury trial of this will contest was concluded on May 7, 1971. Twenty days thereafter, on May 27, 1971, attorneys for appellants filed a motion for a new trial containing 16 separate grounds, making no mention of "newly discovered evidence," although appellant Ellis Till states in his affidavit in support of the amended motion for new trial based on "newly discovered evidence" that he found out about the letters on the night of May 7, 1971, the same day the jury rendered a verdict, and that the letters were found the next day, May 8, 1971, and that he delivered copies of the letters to his attorneys on May 18, 1971, nine days before the first motion for new trial was filed.

At first blush, the two letters would seem to meet the test laid down by this court for "newly discovered evidence." However, a review of the history of this case indicates otherwise. The testator, Joseph A. Till, moved into the home of appellee, Gertrude Till, in the month of October, 1965, and remained there until the date of his death on July 2, 1970. Appellant, Ellis Till, and his wife, to whom the two letters were written, and all of the other appellants knew that the testator was living with Ben and Gertrude Till.

The testator had made at least two previous wills, in which he made one Will Burgan the principal beneficiary. So far as is shown by the record, Joseph Till never made a will in which Ellis Till, or his brothers, were beneficiaries. After Joseph Till moved into the home of Gertrude Till, the second letter infers that the heirs were active in undertaking to get the second will made in favor of Burgan revoked and destroyed, the result of which would have been, without the making of a will in their favor, that they would inherit his estate as next of kin.

The first letter was written on the 8th. day of February, 1963, when Joseph Till was still living in his own home and eating his meals "on the doorsteps of Will Burgan's," nearly two years before he moved to the home of Gertrude Till. The letter refers to the day set for the hearing of the suit filed by Joseph Till's attorney, to move Williard Till off of Joseph Till's place. The crux of the letter seems to be the fol-

lowing statement. "If the heirs and people don't do something all you will be left out because Will Burgan is a dirty crook." Also, in the same letter, she said: "If it were my family we get together & a lawer and do something. Get rid of Will befor he does worse." There is nothing to indicate that Gertrude Till expected to be named a beneficiary at that time. While there is evidence in this letter that she thought Joseph Till was incompetent at that time, such evidence would be merely impeaching.

The second letter apparently was written shortly after Joseph Till came to live in her home. Note the following quotations from the letter:

"After you left I told Cousin Joe you said you wished he had got you and Ellis to come live in the house with him instead of Will Burgan. He laughed said I didn't think you could get them out of Montgomery down here. He said well *I couldn't have had a better place than I have got no matter where I'd went.* He said Loanie & Comer build a chimney at South end of their house for me to live with them but I couldn't stay down there. He said they couldn't been no better than I've got no how. *He said I love to stay here it a mighty good place to stay.* So we begin to try to get him to will Ellis the 80 acres use to belong to Cousin Johnny. . . He hasn't consented yet but I think maby he will with all the brain washing Ben and I give him about it. . . (Emphasis Added).

The first letter details some of the conditions under which Ellis Till's Uncle Joe was living in his home, and how he was being treated by Will Burgan. This letter was in the possession apparently of Ellis Till's wife more than seven years before the contents of the will were made known by filing the will in the probate court. The second letter was in the home of Ellis Till, in the possession of his wife apparently, nearly five years before his Uncle Joe died.

Appellants contend the second letter shows that she was exercising "undue influence" upon the testator, by her own admission. It can easily be inferred, however, from a close reading of the letter, that she was undertaking to "brain wash" Joseph Till into leaving at least some of his property to Ellis Till, who was considered a favorite nephew. The last sentence negatived any intention on her part to be included as a beneficiary.

■ Without further comment, we find no reversible error in the refusal of the trial judge to grant a new trial on the ground of newly discovered evidence.

■ Appellants also argue that the trial court committed reversible error in sustaining an objection to testimony sought to be elicited from witness-appellant, Dan Till, concerning a statement of Ben Till, deceased husband of Gertrude Till, the principal beneficiary of the contested will, such statement allegedly made by the deceased, Ben Till, to Dan Till when they were trying to get the "prior" will revoked.[2] The

---

2.
"Q (By Mr. Williamson:) Mr. Dan, I was asking you yesterday about your knowledge of the existance of another Will that we have called the Burgan Will.
"A Well, I had been hearing that there was one, maybe six months or something like that ahead of the other one.
"Q Did you take any initiative on your own to get that Will back?
"A No, sir.
"Q Who was the person, if anyone, who initiated this movement to get the Will back?
"A Ben.

"MR. HAMILTON: Your Honor, I want to restate my objection to anything said by Mr. Ben Till to any of these questions.
"THE COURT: What is the basis of your objection, Mr. Hamilton?
"MR. HAMILTON: I beg your pardon?
"THE COURT: What is the basis of your objection?
"MR. HAMILTON: Well, he is not a party of the suit and not a beneficiary under the Will and wouldn't receive anything under it.

court had previously allowed the witness Dan Till to testify that the deceased, Ben Till, had come to see him about getting a will made by Joseph Till, which designated Will Burgan as a principal beneficiary, revoked. Dan Till testified that he went with Ben Till to try to get the so-called "Burgan" will back. Two other witnesses were also allowed to testify about activities and statements made by Ben Till in connection with getting the "Burgan" will revoked. It appears that the jury had the benefit of testimony of the activity of Ben Till in assisting Dan Till, and the other next of kin, in trying to get the will which had been made in favor of Will Burgan away from the attorney who prepared the will. If there was error in refusing to allow the witness, Dan Till, to testify further as to statements made by Ben Till,[3] the error was without injury. Rule 45, Rules of the Supreme Court. Upon an examination of the entire cause, we are of the opinion that the error complained of has not injuriously affected substantial rights of the parties.

█ Appellants assign as error the refusal of the trial court to give two written requested charges to the effect that where the evidence shows the existence of confidential relations between the testator and the principal beneficiary coupled with activity on the part of the beneficiary in and about the preparation of the will, there would be a presumption of undue influence and would place the burden on the proponents to show that the will was not influenced directly or indirectly by such means. Both requested charges, even assuming they stated correct propositions of law,

were adequately covered by the court's oral charge and a written requested charge given at the request of the appellants. The trial court will not be put in error for the refusal of charges covering the same principle of law already given. Beavers v. Boykin, 273 Ala. 413, 142 So.2d 10 (1962); Cullman-Jefferson Counties Gas District v. Reeves, 281 Ala. 67, 199 So.2d 78 (1967).

We find no reversible error is shown by appellant's argued assignments of error. The judgment of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, McCALL and SOMERVILLE, JJ., concur.

COLEMAN, J., concurs in result.

---

"THE COURT: Yes, sir, I believe he is right, I believe anything that Ben Till (sic) would be inadmissible. (sic)

"MR. WILLIAMSON: Now, Your Honor, you have already permitted this information to come in, and I think—

"MR. CALVIN POOLE: We had a continuing objection, Your Honor.

"MR. WILLIAMSON: It's Your Honor's ruling now that you don't think it's admissable (sic) now—

"THE COURT: It might have been before—

"MR. HAMILTON: As I understand it, I had a continuing objection to any statement made by Mr. Ben Till.

"THE COURT: Yes, sir.

"MR. HAMILTON: If we are going to argue this thing I think we ought to do it outside the presence of the jury."

3. See Romano v. Romano, 277 Ala. 207, 168 So.2d 236 (1964).