298 So.2d 248

**BLUE CROSS–BLUE SHIELD OF
ALABAMA, INC., a corporation**

**v.**

**Bonnie J. COOK.**

**Civ. 286.**

Court of Civil Appeals of Alabama.

June 19, 1974.

Rehearing Denied July 24, 1974.

Thornton & McGowin, Mobile, for appellant.

HOLMES, Judge.

This is an appeal from a judgment entered by the Circuit Court of Mobile County. The appellee-plaintiff, Bonnie J. Cook, sought recovery for hospital and surgical bills in an action *ex contractu* on a policy of insurance issued by appellant-defendant, Blue Cross-Blue Shield of Alabama, Inc.

To the action the appellant-defendant filed a plea of the general issue and a special plea alleging that the policy sued upon

provided no benefits "for any condition, disease, disorder or ailment, congenital or otherwise * * * which existed on or before the Effective Date of such Member's coverage hereunder, whether then manifested or known in any way or not * * * unless and until such Member shall have been covered by this Contract * * * for a period of nine (9) consecutive months immediately preceding the date of the commencement of the hospitalization * * *." The plea then alleged that the hospitalization and surgery here involved were for such a pre-existing condition.

The original proceeding in this matter was held in the Court of General Sessions of Mobile County wherein a judgment was rendered for the appellee-plaintiff. Thereafter, an appeal was taken to the Circuit Court of Mobile County, where trial was before a jury which returned a verdict for appellee-plaintiff. After judgment was entered, the appellant-defendant filed a motion for new trial which, after a hearing, was overruled, and it is from this action that this appeal is taken.

Appellant's single assignment of error is that the trial court erred in overruling the motion to set aside the verdict and judgment in favor of appellee-plaintiff and grant a new trial. He argues in brief the failure of the trial court to give the general affirmative charge and that the verdict is contrary to the weight of the evidence.

The basic facts giving rise to this appeal are not unusually complex and the following is gleaned from a stipulation entered into by counsel and contained in the record.

There was a policy of insurance in existence during the period in question; the policy of insurance in question was issued on the 20th day of February, 1972; premiums had been paid; there were hospital and surgical bills involved and the amounts were reasonable. The evidence concerning whether or not appellee-plaintiff was barred from recovery under the terms of the policy because the claims were for a pre-existing condition reveal the following:

The period of plaintiff's hospitalization and resulting surgical bills was the 17th of March, 1972, to the 27th day of March, 1972.

The plaintiff-appellant testified without objection that she started having severe headaches on March 12, 1972. On March 13, 1972, she called her physician who prescribed some pain pills. These pills did not relieve her discomfort in any way and on March 17, she was admitted to the hospital for tests. It was then discovered, as plaintiff testified, that she had a "severe sinus infection." Surgery was advised and performed on March 21, 1972. Mrs. Cook further stated that she had never had any headaches like the ones she experienced beginning March 12, 1972, and has not had the headaches since the surgery was performed. Additionally, she testified she had been treated for allergies prior to this time which were manifested by a stuffy nose and sore throat.

Dr. John Taylor, an otolaryngologist, whose qualifications were admitted by appellant, testified that he had treated appellee-plaintiff previously for a chronic sore throat, postnasal discharge and some frontal headaches. This occurred in mid-January of 1972. At this time, Dr. Taylor testified he made a routine note to get sinus X-rays made. Additionally, at this time, Mrs. Cook was given medication to lessen reaction from certain allergic material. She was again seen by Dr. Taylor on approximately February 1, 1972, and had not had any headaches since taking the aforementioned medication. She was next seen by Dr. Taylor on March 17, 1972, when she was experiencing a "different" headache. It was at this time the X-ray revealed infection in the sinuses and surgery was recommended.

At this point, we deem it necessary to quote certain pertinent testimony and begin with Dr. Taylor's response to the following question, ". . . was there any indica-

tion prior to February 17th that she had a sinus infection as you described it on March 17th?"

"A I wasn't sure whether she did or did not have; but since she cleared with medication other than would usually be used for treatment of infection—in other words, I did not give her any antibiotics, and she cleared with cortisone and with medications usually used to clear up an allergic difficulty; but when she returned in February, I assumed she did not have."

Dr. Taylor additionally testified as follows:

"Q Yes. Now, Doctor, on February the 1st, 1972, when she came to see you, she had symptoms that were consistent with chronic sinusitis, did she not?

"A No, sir. February 1st the only thing she had was some clear nasal discharge and cough. She was not having headaches then—it had stopped. The biggest time was January 19th.

"Q All right. Now, on January 19th, she came to see you then and she did have symptoms which were consistent with chronic sinusitis, were they not?

"A Consistent with, but not diagnosed as such."

The following testimony from Dr. Taylor on pages 44 and 45 of the record is as follows:

"Q Doctor, I want to ask you; in January, there was no indication that you saw from a complete examination of this woman that she had any chronic infection—from your observation?

"A Yes, sir. She had chronic sore throat.

"Q Chronic sore throat; but sinusitis?

"A No.

"Q Was there any indication in February that she had a chronic infection of the nose from your personal examination?

"A No, sir.

"Q When is the first time that she indicated that she did have a chronic infection—sinus infection?

"A The first time I knew she had a sinus infection was when I saw the x-rays. In fact, my examination on the 17th did not reveal anything; so this is strictly based on the x-ray report.

"Q You stated that her headaches at this point were different from any headaches that she had ever had before?

"A They were much more severe than when she came in the previous time."

.    .    .    .    .    .

"MR. THIRY: No. Doctor, in your opinion, is there any connection between —in your opinion, was she suffering from the same thing previous to March 17th as she was suffering from on March 17th or 18th?

"A No—

"Q Was it the same as that condition before—

"A No. Oh, no; this was not the same as that condition. As I stated before, sinusitis doesn't usually improve on just cortisone and antihistamines.

"Q In other words, if this were an infectious type of disease, you would have treated it with antibiotics; is that right?

"A Yes.

"Q And you were treating her not with antibiotics but with anti-allergics; is that what you said?

"A Right."

In response to inquiry by the trial court, Dr. Taylor stated the following:

"Q From the totality of what you saw in January and February and in the hospital, and from what you now know, what is your considered medical opinion

as to whether or not this condition, disease, disorder or ailment was in existence on February 20th, whether it manifested itself or not?

"MR. THIRY: Judge, can I inject sonething; if he's going to answer that question, I want it to be the exact condition, the same—

"WITNESS: The one for which I operated on her?

"THE COURT: Yes, sir.

"A · The one for which I operated on her was a condition which was causing pain and a sinus infection which I had no knowledge existed prior to that time.

"Q Is it your opinion then that it did or did not exist?

"A Prior to this time?

"Q Yes, sir.

"A She could have had it and I just didn't know about it.

"Q Well, whether it manifested itself or not though, Doctor—we are kind of skirting the question. The policy does not require that it be visible. The policy says if she in fact had that same condition, disease, disorder or ailment, whether it was obvious or not or whether it was known. Is it your judgment that she did or did not have that condition February 20th of '72?

"A She may have had some chronic sinusitis, but as far as I could tell, I could not find any evidence of it at the time I saw her previously.

"Q All right. Anything further?

"A I can't answer it, honestly."

The appellant-defendant's witness, Dr. Gilchrist, an opthalmologist, testified as an expert witness as a result of studying Mrs. Cook's hospital records and stated the following:

"MR. THORNTON: Dr. Gilchrist, I show you the Defendant's Exhibit 'A'. Can you tell us what that is?

"A Yes, sir. This is a Doctors Hospital medical record.

"Q Have you seen it before?

"A Yes, sir.

"Q Have you read it?

"A Yes, sir.

"Q Have you studied it?

"A Yes, sir.

"Q Doctor, are. you in a position to render an opinion as to when the patient in there, Mrs. Bonnie Jean Cook—when the condition for which she was operated on—are you in a position to—or have you—I'm getting myself all bungled up; let me start all over. Doctor, are you in a position from your study of that record to have an opinion as to when this patient developed the condition for which she was operated on; yes or no?

"A Do I have an opinion—

"Q Yes, sir.

"A —as to when this might have started?

"Q Yes. Yes or no.

"A Yes.

"Q All right, sir. Now, I'll ask you, Doctor, is it your opinion that Mrs. Bonnie Jean Cook had the condition for which she was operated on on February 1st, 1972?

"A If you will allow me to—

"Q I would like for you to give it to me 'yes' or 'no'.

"A Let me see here—the dates here. Can I get dates on here?

"Q Yes, sir.

"A All right, sir. Then—February the 1st you're asking me about; when was this hospitalization—hospital admission, may I ask you that?

"Q March the 17th.

"A March the 17th. And was it there around February the 1st, is that right?

"Q February the 1st is—yes, there was an examination there—that appears to be —

"A Well, I was wondering, was that the question you asked me.

"Q Oh, I'm sorry; that was the question I asked you, but that's not the question I want. The question I want is February the 20th.

"A Is it my opinion that this condition existed on February the 20th?

"Q 1972, yes.

"A A month before this, approximately?

"Q Yes.

"A Yes.

"MR. THORNTON: No further questions.

"THE COURT: Mr. Thiry, you want to cross him?

"MR. THIRY: Yes, I do."

As noted above, it is the contention of distinguished counsel for appellant that the court erred in refusing to give the affirmative charge with or without hypothesis and/or the verdict is contrary to the weight of the evidence.

■ At the outset, we note that jury verdicts are presumed to be correct, Merchants Bank v. Cotton, 289 Ala. 606, 269 So.2d 875; 2A Ala.Dig., Appeal and Error, ☞930(1), and the refusal of the trial court to grant a new trial adds verity to the propriety of the verdict and thereby strengthens the presumption in its favor. Till v. Till, 289 Ala. 404, 268 So.2d 17; 2A Ala.Dig., Appeal and Error, ☞930(1).

■ Additionally, the refusal of the lower court to grant a new trial on the ground that the verdict is contrary to the weight of the evidence will not be reversed unless, after allowing all reasonable presumptions as to its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court reviewing the cause on appeal that it is wrong and unjust. Ala. Great Southern Ry. v. Evans, 288 Ala. 25, 256 So.2d 861; Johnson v. Hodge, 291 Ala. 142, 279 So.2d 123; Shepherd v. Southern Ry. Co., 288 Ala. 50, 256 So.2d 883; Campbell Construction Engineers, Inc. v. Water Works and Sewer Board of City of Prichard, Ala., Inc. v. Marshall Durbin and Company of Mobile, Inc., 52 Ala.App. 129, 290 So.2d 194.

■ After carefully examining the record before us, and applying the above mentioned principle of law, we cannot say that we are clearly convinced that the verdict is wrong and unjust, even though we may have a different view of the evidence. Put another way, a reviewing court cannot substitute its own judgment for that of the trier of facts. Scott Paper Co. v. Novay Cherry Barge Service, Inc., 48 Ala.App. 368, 265 So.2d 150.

Here, the testimony of plaintiff's expert witness, as set out hereinabove, can be viewed as showing that the sinus condition in question could have been one which was not a pre-existing condition and therefore not barred by the aforementioned terms of the policy relating to the pre-existing condition. Additionally, the plaintiff's description of her symptoms is consistent with Dr. Taylor's testimony. Reading both experts' testimony brings to this court's mind the fact that the practice of medicine is not always an exact science.

We further note that as a result of appellant's plea, the burden of proof as to the existence of a pre-existing condition was upon him.

From the above, we hold the trial court did not err to reversal in refusing to give the general affirmative charge either with or without hypothesis.

■■ Where different inferences may be reasonably drawn from the evidence, the general affirmative charge should not be given in favor of either party. Payne v. Mathis, 92 Ala. 585, 9 So. 605; Bromly v. Birmingham Mineral R. Co., 95 Ala. 397, 11 So. 341; Hardy v. Reynolds, 42 Ala.App. 106, 154 So.2d 50. The general affirmative charge should not be given for the defendant if there is the slightest evidence tending to prove a right of recovery by the plaintiff or if there is evidence reasonably affording an inference adverse to right of recovery by the defendant. Birmingham Loan Co. v. Klinner, 39 Ala. App. 125, 95 So.2d 402.

Appellee-plaintiff has filed a motion to strike appellant's brief for failure to comply with certain aspects of Rule 9(10) of the Revised Rules of the Supreme Court of Alabama. We have considered this motion and same is hereby denied as there is substantial compliance with Rule 9(10).

Motion denied and the case is due to be affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.