# Morris, *et al. v.* Brown.

## *Trespass and Trover.*

(Decided May 9, 1912.    58 South. 910.)

1. *Pleading; Amendment; Discussion.*—It is within the discretion of the trial court to allow a plaintiff to amend his complaint by adding counts.

2. *Appeal and Error; Review; Harmless Error.*—Where the subject matter of questions excluded by the court was subsequently fully brought out, the primary exclusion was not prejudicial.

3. *Partnership; Estoppel; Holding Out as Partner.*—Where a sawmill outfit was purchased by plaintiff and paid for in part by the partnership of which he was a member, and in part by notes executed by the firm, and a boiler for the same was purchased by A, the other partner, and paid for with his individual check, and the operating expenses were paid either by the firm or by A, and plain-

[Morris, et al. v. Brown.]

tiff told one of defendants that the sawmill was purchased and operated by the firm and purchased goods from the other defendant for the declared purpose of putting them into the partnership business, and afterwards one of defendants received the property from A, in payment of a firm debt, and leased it to the other defendant, plaintiff was estopped to set up an individual claim to the property against the defendants, although subsequent to his purchase he took up the firm notes given in payment therefor without the knowledge or consent of his partner and substituted in lieu thereof his individual note.

4. *Same: Firm Property.*—Property acquired and treated as above stated was the property of the partnership, and not the individual property of plaintiff

5. *Same; Ratification.*—Where the only objection one partner interposed to the sale by his partner of the sawmill, which he later asserted belonged to him individually, was that it was mortgaged to a third person, and such partner afterwards consented to a sale of the property by the buyer, and leased the land to the transferee of the buyer on which the sawmill stood for sawmill purposes, such act was a ratification of his partner's sale of the property.

6. *Trover and Conversion; Nature and Elements.*—Although a defendant had been told by a plaintiff that a sawmill was purchased and operated by plaintiff's firm, he did not become liable for conversion by taking a lease of the property from a purchaser from plaintiff's partner, or by subsequently surrendering the property to such purchaser with plaintiff's consent.

7. *Same; Damages.*—Where property purchased by plaintiff was paid for by the firm of which he was a member, and was mortgaged to a third party, and plaintiff never paid any part of the purchase price, he could not recover its full value in trespass or trover, even if he had an individual interest entitling him to recover. as he had neither the legal nor the equitable title.

APPEAL from Blount Circuit Court.

Heard before Hon. JOHN W. INZER.

Trespass and trover by J. E. Brown against E. A. Morris and others, for the conversion of a sawmill outfit. Judgment for plaintiff and defendants appeal. Reversed and remanded.

JOE C. HAIL, and H. K. WHITE, for appellant. The court was in error in permitting Brown to testify in reference to the value of the sawmill outfit.—*Winter v. Burke,* 31 Ala. 33; *Nelson v. Wood,* 61 Ala. 177. Counsel discuss other assignments of error, but without further citation of authority.

[Morris, et al. v. Brown.]

O. A. STEELE, and WARD & WEAVER, for appellee. The bill of exceptions violates rule 32, Circuit Court Practice.—*So. Ry. v. Jackson*, 133 Ala. 388; *Meredith v. Nash*, 4 S. & P. 59. The cause should be affirmed for failure to assign errors on the record.—Rule 1, Supreme Court Practice; *Hunter v. L. & N.*, 43 South. 802. Non-experts can give their opinion as to value.—*So. Ry. v. Morris*, 143 Ala. 628; *A. G. S. v. Moody*, 92 Ala. 279. Counsel discuss other assignments of error as to evidence and insist that they were either fully brought out on a subsequent examination or that they called for conclusions or opinions of the witness.—*Alexander v. Handley, et al.*, 96 Ala. 220. Charge AA refused to appellant was faulty for several reasons.—*Alexander v. Handley, supra; U. S. Co. v. Charles*, 131 Ala. 658. The assignments of error from 17 to 30 are argued en masse, and the only reason given why their refusal was error was that if they were partners the court erred in refusing the charges. Many of them were the affirmative charges, and hence properly refused.—*W. U. T. Co. v. Brown*, 141 Ala. 175. Assignments of error not argued will be considered as waived.—2 Cyc. 1015; *Ashley v. Martin*, 70 Ala. 545. Addington's transfer to Morris conferred no right upon him whatever because Brown was in the adverse possession of the property.—*Huddleston v. Huey*, 73 Ala. 215; *Foy v. Cochran*, 88 Ala. 353.

MAYFIELD, J.—Appellee, J. E. Brown, sued E. A. Morris and S. M. Allgood, in trover and in trespass, to recover damages for the wrongful conversion and taking of a sawmill outfit, consisting of a boiler, engine, shingle mill, planer, gristmill, rocks, belting, implements, etc., identified as being those sold by E. A. Morris to E. W. Glenn, and Frank Gossett. A trial was had upon the

general issue, and resulted in a verdict in favor of the plaintiff for $1,500. On motion for a new trial, the plaintiff consented to the verdict's being reduced to $1,200, and thereupon the court denied the motion, and entered up a judgment in favor of the plaintiff, against both of the defendants, for $1,200, from which judgment this appeal is prosecuted.

The record is voluminous, containing all the testimony and a transcript of all the proceedings had in the lower court. It contains 42 assignments of error, all of which are insisted upon by the appellants, who were the defendants.

We deem it wholly unnecessary to consider these various assignments of error seriatim. The great majority of them go to objections and exceptions to rulings of the trial court upon the admission and rejection of evidence upon the trial. Most of them go to matters which rested in the discretion of the trial court, and as to the rulings upon such it is clear that there was no reversible error. For example, the first assignment is that the trial court allowed the plaintiff to amend his complaint by adding additional counts—which was purely within the discretion of the court. The second assignment is that the trial court allowed the plaintiff to testify to the value of the property, or of a part thereof, which is the subject of this suit. While assignments from 3 to 11 inclusive, all go to rulings of the trial court upon questions propounded to the plaintiff as a witness. It is sufficient to say that there was no merit in any of these objections and exceptions. The questions and answers allowed were proper, and those denied the appellant were subsequently brought out fully in the progress of the trial; it therefore affirmatively appears that there was no injury.

Among these questions may be mentioned the following: "What was the sawmill outfit worth in your judgment, at the time it was taken from you by Morris?" "Were Morris and Allgood ever in business together?" "State all that occurred on the occasion when you got the $200." "Were you arrested right after that?" "Is that Mr. Addington?" "Were you both in jail?" "That was the same transaction down there about the policy?"

As before stated, all of these questions and answers, which were insisted by appellants as admissible, the record shows were gone into fully; and those which were allowed to appellee over appellants' objection were properly allowed. There is, however, error in this record which is both material and manifest, and must result in reversing the judgment.

The facts disclosed by this record may be briefly stated as follows: The plaintiff, J. E. Brown, and one J. L. Addington, about August, 1907, it seems, entered into a partnership, and did business as such, under the firm name and style of the "Addington & Brown Mercantile Company," which will be hereinafter referred to as the partnership. This partnership did business at Avondale, near Birmingham, Ala., and at Hendricks, in Blount county, Ala. The chief business at each of these places was the mercantile business. The record shows that this partnership purchased the property in question, with the exception of a boiler, from one Mrs. Morrow, who resided in Marshall county, at the price of $600, of which $100 was paid in cash, and five notes, for $100 each, were given for the deferred payments. This amount of $100 was paid by the partnership, and the notes were signed by and in the name of the partnership. The boiler in question was bought by Addington, for the partnership, from Williams & Wadley, in Randolph county, and for it Addington gave his individual

check. This mill was operated for a short time by the partnership.

In the fall or winter of 1907, there was a series of differences and disagreements between the partners, Addington and Brown, and both were arrested, prosecuted, and imprisoned on account of these controversies. One of the storehouses of the partnership, located at Hendricks, upon which the partnership held a fire insurance policy for $1,100, was burned in the fall of 1907. This insurance seems to have been the cause of one of the disagreements between the partners. The policy was placed in the hands of an attorney for collection, and was subsequently obtained by Brown, who made a settlement with the insurance company for $200, which amount Addington claims Brown never accounted for.

About the time the partnership was being formed, and for the purpose of carrying on the business, Brown purchased a stock of goods from one Dr. Morris, the defendant in the court below, and the appellant here, which stock of goods consisted of a drug store and other goods, at Avondale. At this time Brown also borrowed $1,000 from Morris, which amount was deposited to the account of Addington and himself, and seems to have constituted Brown's contribution to the partnership.

Partnership in mercantile business with Addington is not denied by Brown, but he does deny that either the sawmill business, or the machinery and implements necessary to carry on such business, were the property of the partnership, and denies that Addington had any interest whatever in this property. Nevertheless, the undisputed facts in the case now show conclusively that the property in question was that of the partnership, and not that of Brown, as claimed by him. It is true that the purchase of the property was conducted by

[Morris, et al. v. Brown.]

Brown rather than by Addington, that Mrs. Morrow and Mr. Morrow both testified that it was bought by Brown, and that Addington said he would have, and did have, nothing to do with it; but the undisputed fact remains—a fact not disputed by the plaintiff, but asserted by him—that he, individually, never paid one cent of the purchase price of the sawmill or of the boiler, that the $100 was paid by the partnership, of which Addington was a member; that the five notes were signed by the partnership; that the boiler was purchased by Addington for the partnership, but was paid for by his individual check.

It is, moreover, true that Brown and Mr. and Mrs. Morrow testified that, subsequent to the sale of the sawmill, the cash payment, and the execution of the notes for the purchase price, he took up the partnership notes, and in lieu thereof gave his individual notes and a mortgage on the property to secure the deferred payments; but this was without the knowledge or consent of his partner, and he could not thus take advantage of his own wrong, and, by a secret motive and intention, thus purchase this property on his individual account, and pay for it out of the partnership funds. He was, all this time, dealing with the world in general and with Morris and Allgood (defendants in this suit) in particular, as for a partnership between himself and Addington. He purchased the stock of goods from Morris, the defendant, for the declared purpose of putting it into the partnership business. He stated to the other defendant, Allgood, that the sawmill, implements, etc., were purchased by the partnership, and owned and operated as such by the partnership. Having thus induced these defendants to deal with him and Addington, in relation to this property, upon the theory and the statement by him that it was partnership property, he

will not now be allowed to deny those facts, and to assert an individual claim to the property.

The facts are undisputed that Addington, acting for the partnership, sold this property to Morris, in payment of a debt of the partnership to Morris, which debt was for capital stock put into the partnership business, and which Brown induced Morris to sell to the partnership. It would be unconscionable to allow Brown to now recover of Morris twice the value of the property, for a conversion, when the same was sold to him by the partnership, and in payment of a partnership debt —which facts Brown does not even attempt to deny, but claims merely that it was his individual property and that Addington had no right to sell it to Morris.

While Brown claims that the sawmill business was owned and operated by him individually, and not by the partnership, yet he fails to show that he, individually, ever paid one cent of the purchase price of the machinery or the operating expenses of the business. On the other hand, it is shown conclusively, and even admitted by Brown, that every cent of the purchase price and of the operating expenses paid was paid either by Addington himself, or by the partnership; that all the employees who operated the sawmill, from the time it was purchased from Mrs. Morrow until it was sold to Morris, were employed either by the partnership or by Addington, and were paid for their services by him individually or by the partnership.

It thus clearly and conclusively appears that both the machinery and the business were that of a partnership, and not that of Brown.

This record conclusively shows that Brown was willing and consented to the sale of the property to Morris. The only objection interposed by him to the sale was the fact that it had been mortgaged to Mrs. Morris;

and the record also shows that he thereafter consented to a subsequent sale of the property by Morris to Frank Gossett and E. W. Glenn, and that he and his sister leased the land upon which the sawmill was situated, to these parties, for sawmill purposes—upon which land they operated the identical mill in question, having purchased it from Morris. This was certainly a ratification of the sale by Addington to Morris, and of that by Morris to Gosset and Glenn.

There is nothing in this record to show any individual claim, right, title, or interest, in Brown, to the property in question, as against the partnership of Addington & Brown, but every fact and circumstance shows that the property was purchased by Brown, from Mrs. Morrow, for the partnership, and that it was paid for with partnership funds, except the boiler, which was purchased for the partnership by Addington, who, however, gave his individual check for it. Brown could not thus, by a secret motive and transaction, acquire an individual right and title to the property as against the partnership of which he was a member, and without the knowledge or consent of the other member.

If this contest were between Brown and Mrs. Morrow, who sold the property to him, and who subsequently redelivered to him the five notes executed by the partnership, accepting in lieu thereof Brown's individual notes and a mortgage to secure the deferred payments, the result might be different; but whatever may be the rights of Mrs. Morrow, the mortgagee, this cannot enable the plaintiff, Brown, to thus defraud the partnership of which he was a member, or Morris and Allgood, with whom he dealt, claiming, at the time, that he was dealing with them, in behalf of and representing the partnership, upon the faith of which representation of partnership he induced them to deal with and extend

credit to him. He cannot be allowed, in a court of justice, by merely denying partnership in the sawmill business and in the ownership of the machinery, to acquire an individual right, title, or interest in the property, to the loss and damage of the partnership and its creditors, when he had thus induced them, by his words and conduct in dealing with them, to consider it as partnership property.

This record wholly fails to show any conversion of the property in question by the defendant Allgood. The only connection he is shown to have had with the property was as lessee thereof, from Morris, after Morris had purchased it from the partnership; and, as soon as he learned that Brown objected to the lease, he declined to operate the business under the lease from Morris, and took up the matter with Brown, thereafter leasing it from Brown and operating it under such lease; but subsequently, though with the consent of Brown, after he and Brown had a disagreemnt as to the operation of the business, and after Brown had removed a part of the machinery, thus preventing further operation of the business under the lease, he redelivered the property to Morris.

Brown admits that the defendant Allgood operated the mill under a lease from him, and paid him therefor. There is absolutely no evidence to show that Allgood converted the property in question; Brown having stated to Allgood, soon after the property was purchased from Mrs. Morrow, that it was purchased by the partnership and operated by it until sold to Morris to satisfy a debt owning from it to him. Allgood was certainly justified in leasing the property from Morris, the purchaser, without being liable to Brown or to the partnership, in either trespass or trover, for merely taking possession of the property under such lease from Morris—which is

the most that any phase of the testimony tends to show that he did in connection with the property.

Even if Brown's theory of this case could be true, he certainly showed no right to recover twice the value of the property, in an action of trover or trespass as to such property. His own evidence, if true, showed that he had never paid a cent for the property; that all that was ever paid, either as purchase price or for installing and operating, was paid by the partnership or by Addington; and that without Addington's knowledge or consent he mortgaged it to Mrs. Morrow. So, if his theory could be true, the equitable title of the property vested in the partnership, and the legal title in Mrs. Morrow; and while we cannot say that he could not recover in trespass or trover, on this account, yet certainly his damages and injury would not be the entire value of the property, when he admits that he had never paid one cent of the purchase price nor for the operation of the business.

Had the defendant Morris sued out an attachment against the partnership, and it had been levied upon this property, and it had been sold or condemned to satisfy the debt owing by the partnership to him, then unquestionably, under Brown's own evidence in this case, he could not have recovered damages for such levy or sale, nor could be have recovered the property under a claim suit instituted in that attachment proceeding. The property being sold by the partnership in payment of the debt owing to Morris, he is likewise not entitled to recover in trespass or trover for a conversion of the property.

It therefore follows that the court should have given the affirmative charge as requested by the defendant.

Reversed and remanded. All the Justices concur.