62 So.2d 477

### WHITE v. JACKSON.
6 Div. 496.

Court of Appeals of Alabama.

Jan. 6, 1953.

Perry Hubbard, Tuscaloosa, for appellant.

644

Jas. W. Aird, Birmingham, for appellee.

CARR, Presiding Judge.

The complaint in this case is cast in three counts. The first count is in code form and declares upon an account. The second is also in code form and states a claim for money had and received. The third count purports to be for work and labor performed by the plaintiff for the defendant, but it fails to conform exactly to the code form. The difference consists in a failure to allege that the work and labor were done at the request of the defendant.

All three counts, according to the allegations, seek to recover the same amount and by reference to the evidence all relate to the same transactions.

The verdict of the jury is: "We the jury find for the plaintiff T. C. Jackson and assess the damages at $535.96."

The court overruled demurrers to the complaint and each count thereof. Insistence for error is predicated on this ruling of the court as it relates to count three of the complaint.

It is well established by the authorities in this jurisdiction that, if there is at least one good count in a complaint and the proof sustains its averments, the verdict of the jury and the judgment thereon are referable to the good count. This rule prevails although other counts may be bad.

In this state of the record harmful error will not be charged in the action of the court in overruling demurrers to a bad or insufficient count. Shannon v. Lee, 178 Ala. 463, 60 So. 99; Finney v. Newson, 203 Ala. 191, 82 So. 441; Alabama Power Co. v. Lewis, 224 Ala. 594, 141 So. 229; Fagan Peel Co. v. Harrison Co., 16 Ala.App. 470, 79 So. 144; City of Birmingham v. Lynch, 29 Ala.App. 242, 197 So. 46; Brush v. Rountree, 33 Ala.App. 227, 32 So.2d 244.

In January 1946 the plaintiff, T. C. Jackson, and the defendant, V. L. White, entered into an oral contract. The effect of the agreement was that the parties would go into the roofing business. Mr. Jackson was to look after the jobs and Mr. White was to furnish the necessary amount of money for the operation. The net profit from each completed job was to be divided equally between the two parties.

During the operative pendency of the agreement some jobs were undertaken with the express understanding that the criterion of division would be based on a "reasonable profit."

The defendant furnished the plaintiff weekly or monthly statements of the profits from completed jobs, and settlements were made on the indicated basis.

This relationship continued until July 1948, at which time Mr. Jackson gave Mr.

White notice of his desire or intention to terminate the business relationship.

A meeting between the parties resulted in partial settlements. These included certain undivided profits from completed jobs and a division of the physical assets of the business relationship.

The controversy which forms the basis of the instant suit arises out of Mr. Jackson's claim that the amount he received in settlement did not include his profits on certain completed jobs on which no prior accounting had been made.

During the time the parties were in business *many* roofing jobs were taken and completed. In the main, the net profit from each of these was small in amount.

The record evidence is much in detail and is rather involved and complicated. This is due to the inquiry into the circumstances of so many separate roofing jobs.

In relation to some, Mr. White testified that he had been unable to locate his records and consequently he could not state whether or not net profits were realized or for that matter whether he had received payments from the owners for the work done.

The effect of appellant's testimony is that the appellee had not received his share of the profits from all the completed jobs, but the total of these unpaid amounts was a sum less than that found by the jury even after taking into account interest allowance.

Phases of the evidence support appellee's position that these balances were equal to or in excess of the amount of the judgment.

This takes into account the claim that appellee was indebted to the appellant for some roofing. The evidence in this aspect was in dispute. The appellee contended that this item was included in the calculations at the time of the settlement.

In this state of the record there is no merit in appellant's insistence that the verdict was excessive and that the motion for a new trial should have been granted on this ground.

Ground number 5 of appellant's motion for a new trial is as follows:

"The verdict is contrary to the law of the case in that plaintiff was permitted to recover in an action of general assumpsit for debts existing as a result of a partnership or joint adventure with defendant where it affirmatively appeared that there had been no settlement of the accounts of the joint adventure or partnership and where it affirmatively appeared that no balance had been struck."

The claim for error in this aspect is presented in the manner just above indicated; by the request for the general affirmative charge, both with and without hypothesis; and by tender of written instructions.

In detailing the terms and conditions of the working agreement, appellee testified:

"Q. Do you have any understanding as to what the losses were, expressed or implied? A. Losses were not mentioned."

The appellant gave this version:

"Q. This business was not a partnership? A. No, sir.

"Q. What was the arrangements you made about it? A. Well, it was just a working agreement.

"Q. Well, what were the terms of the agreement? Lets get that clear. A. Do you want me to start from back in January, 1946?

"Q. That is right. A. * * * and he asked me how much was I going to pay him. I said I don't know, Jack; how much are you worth? He said I think I ought to be worth $50.00 a week. I said All right. Yes, I think you are worth $50.00 a week. But, I said, if you want to work these jobs like some of the other fellows are doing it and taking these jobs. At that time I was working on supervision of the labor, and everything, and, I said, We will split the net profit. I said Of course that means after we take out the material, and labor, and everything. He said he had no money. I told him I had a pretty good credit, and we wouldn't have to worry about that part of it. He said Well, I am ready to go to work. So from time to time during

1946 I made out those little sheets showing the net profits on a lot of jobs. I did that whether we had collected or not. Well, I seen I was sticking my neck out and going in the hole, because if a man in business don't collect for everything he does when he is out doing contract roofing job, he is just out. In the meantime, along about, I guess, early 1947, I said Jack, there is a lot of these jobs I can't pay you on until we collect the money. It is very foolish for me to pay out half the profits on these jobs and I have not collected the money. He agreed to that. He agreed I was giving him a fair deal. I think the boy knew I was giving him a fair deal. He had worked for me a long time."

Generally speaking a partnership inter se is a contract between two or more persons whereby funds, effects, labors or skills are to be devoted to some lawful business or enterprise. The agreement must include the understanding that the parties will share both the profits and the losses. The latter as well as the former is an essential requisite to a partnership. Watson v. Hamilton, 180 Ala. 3, 60 So. 63; Heller v. Berlin, 208 Ala. 640, 95 So. 10; Cunningham v. Staples, 216 Ala. 531, 113 So. 590; Cox v. Fielding, 24 Ala.App. 68, 130 So. 164.

In the case at bar the business relationship between the appellant and appellee did not include an agreement to share the losses. The evidence, therefore, did not furnish any factual foundation for the application of the doctrine stated in ground number 5 of the motion for a new trial.

Assignment of error number 7 relates to the action of the court in refusing the following written instruction:

"I charge you gentlemen of the jury that if you are reasonably satisfied from the evidence that there existed a special contract between the plaintiff and the defendant, then if the plaintiff is to recover, he must recover according to the terms of such contract, or not at all."

The proof in support of some of the counts of the complaint establishes that the appellee's share of the profits had been earned but had not been paid over to him. So we have a situation where the express contract had been performed and the only duty remaining under its terms was for payments to be made to the appellee. Under these circumstances an action would lie under the common counts. Blythe v. Embry, Ala.App., 61 So.2d 142;[1] Ludden & Bates v. Watt, 18 Ala.App. 652, 94 So. 239; Martin v. Massie, 127 Ala. 504, 29 So. 31; McCormick v. Badham, 204 Ala. 2, 85 So. 401.

The charge in question is misleading in tendency in that it conditions the plaintiff's right to recover solely on the basis of the terms of the contract.

We have responded to each assignment of error which is pressed in brief of counsel.

The judgment below is ordered affirmed. Affirmed.