278 So.2d 713

**Elvira Smith BALDWIN et al.**

v.

**Virginia Wilson ODOM et al.**

**SC 257.**

Supreme Court of Alabama.

May 24, 1973.

**130**

Gray, Seay & Langford, Montgomery, for appellants.

No brief for appellees.

COLEMAN, Justice.

Respondents appeal from an adverse decree in suit to quiet title to a parcel of land described as follows:

"SW ¼ of SE ¼ Section 23, Township 15 North, Range 2 East, in Marengo County Alabama, containing 40 acres, more or less."

The bill of complaint was filed November 5, 1971. Complainants Virginia Wilson Odom and Hugh E. Wilson, Jr. allege that Virginia Wilson Odom is the record owner in fee simple subject to a reservation for life to Hugh E. Wilson, Jr. of all minerals and timber. Complainants further allege that respondents, as heirs of one Adam Smith, claim or are reputed to claim some right, title, or interest in the land.

Respondents answer that they are the heirs of their father, Clarence Smith, Sr., deceased, who died in 1939 and was the only son and legal heir of Adam Smith and his wife, the original record owners of the land. Respondents allege that they claim title through their father.

Complainant Hugh E. Wilson, Jr. testified that in 1958 he purchased the land from Dan Coleman who was living on it at that time. A copy of the deed from Coleman to Wilson was introduced in evidence. The deed is dated September 5, 1958. It was filed for record in the office of the Judge of Probate September 10, 1958. Wilson testified that he also owned other land adjoining the land in suit.

Wilson further testified that he began paying taxes on the land in suit in 1958; that he has continually assessed the land for taxation and paid taxes on it each year thereafter; that he personally paid off a mortgage on the land to Planters Bank at Thomaston; that the bank cancelled the mortgage upon his payment of it; that from 1958 until August, 1970, he had no knowledge that any third parties were claiming title to the land; that in August, 1970, he received a letter from the tax assessor stating that Elvira Smith Baldwin had assessed the land to the estate of Adam Smith and had stated that she was an heir of Adam Smith; that the letter was the first notice Wilson had that there were other claims to the land.

Wilson further testified that in December, 1959, he planted pine trees on the land; that, in his judgment, timber growing was the best use to which the land was suited; that he has sold two loads of hardwood pulpwood off the land; that he has "planted a spot" and used the land for recreation and hunting; that all of his land, including this forty, was enclosed by fence except six acres; that he put a fence all around the 120 acres some years ago; that as you enter the property there is a large tin sign stating that it is owned "by us and no trespassing"; that the signs have been up since he purchased the property; and that he has given permission to hunt on the land to Larry Walters who looks after the place and had a man arrested for killing a doe deer on the place.

The chief clerk in the office of the tax assessor testified that Wilson first assessed the land in suit October 1, 1958, for the 1959 tax year, and thereafter the land has been continuously assessed to Wilson; that in 1970 there was another assessment, a double assessment, made on this particular land; and that "A 1928 ownership township plat shows Adam Smith as the owner."

Larry Walters testified that he owns land adjoining Wilson's land with which the witness is familiar; that he is familiar with the land in suit and has known it "Since the fifties"; that he has been familiar with it since 1958 to date; that everybody knew Wilson owned it; that he has never known of any adverse claimants to the land; that the best use of the land in suit is timber growing; and that there are "no trespassing" signs all around Wilson's property.

Lee Kirkham testified that he knew the land in suit; its best use was timber growing; that there are "no trespassing" signs on the boundaries of the property; that since 1958 Wilson is the only one who claimed to own the land; that he did not know Clarence Smith who lived on the land but did know a Clarence Smith that used to work at "the Ford place" and went to Montgomery; and that he does not and did not know Adam Smith.

Respondent Elvira Smith Baldwin testified that she lived in Montgomery and had lived there continuously for 22 years since May, 1948; that she is an heir of Adam Smith through her father, Clarence Smith; that she was born on the land in suit; that her brothers and sisters were born there; that Dan Coleman was living on the property with them; that it was in "the early thirties"; that her parents died in 1931 and 1939; that Dan Coleman continued to live on the property; that they allowed him that courtesy; that he had no interest in the property in suit; that the witness was the last of the family to leave the property; that she married in 1948 and went to Montgomery; that Dan Coleman continued to live on the land; that she gave him money to pay the taxes; that 1948 was the last time she paid the taxes herself; that she did not know that he was claiming the property as his own until December, 1963; that she contacted a lawyer in Linden in 1966 and paid him to look into the matter, and in 1968 paid him $25.-00 and gave him a note for $725.00 as a fee, payable $60.00 per month; that she paid $25.00 on the note. Two receipts and the note were offered in evidence. The word "VOID" is written on the note. She testified that the attorney marked the note void; that he told her he could not represent her and returned the note to her; that in 1969 she paid taxes on the land for six years back; that from 1948 to 1964 taxes had not been paid "in the name of the Estate"; that she trusted Dan Coleman to pay the taxes; that she had been on the land since 1948 continually until "1959—1958" and was there in 1964; that in 1964 she saw a no trespassing sign; that she visited Dan Coleman frequently; that he moved off the land in 1962 and moved to Linden; that he made no statement to her about selling the land until 1964; that he died in 1965 or 1966.

The respondents argue that the evidence is insufficient to support a claim of ownership by adverse possession and the decree appealed from should be reversed.

■ The evidence was heard ore tenus by the trial court. We are of opinion that the evidence so heard in the instant case is sufficient to support a finding that complainants had acquired title by adverse possession under a deed from a grantor in possession, purporting to convey title to complainant Wilson, duly recorded in the county in which the land lies for ten years before the commencement of the suit, and also that he had annually assessed the land for taxation and paid the taxes for ten years prior to commencement of the suit. See Title 7, § 828, Code 1940.

■ All acts of a possessory nature committed by the adverse claimant are to

be considered collectively rather than independently in determining the sufficiency of his possession. W. T. Smith Lumber Company v. Cobb, 266 Ala. 146, 94 So.2d 763.

 Where the evidence is heard ore tenus by the trial court, every presumption will be indulged in favor of the trial court's findings of fact which will not be disturbed unless palpably wrong. Payne v. Payne, 284 Ala. 699, 228 So.2d 15; see many cases cited in Alabama Digest, Appeal & Error, ☞1008(1). We cannot say that a finding in the instant case that complainants had acquired title by adverse possession for ten years is palpably wrong. Accordingly, the decree appealed from is due to be affirmed.

Affirmed.

HEFLIN, C. J., and BLOODWORTH, McCALL, and JONES, JJ., concur.