290 So.2d 194

### CAMPBELL CONSTRUCTION EN-GINEERS, INC.

v.

### The WATER WORKS AND SEWER BOARD OF the CITY OF PRICHARD, ALABAMA, INC.

v.

### MARSHALL DURBIN AND COMPANY OF MOBILE, INC.

Civ. 229, 229–2.

Court of Civil Appeals of Alabama.

Feb. 13, 1974.

ty appellant Campbell Construction Engineers, Inc.

Tonsmeire & McFadden, Ray G. Riley, Jr., John W. Parker, Mobile, for third par-

132

George E. Stone, Jr., Mobile, for appellant and third party appellee, The Water Works and Sewer Board of the City of Prichard, Ala., Inc.

Louis E. Braswell, Mobile, for appellee, Marshall Durbin & Company of Mobile, Inc.

HOLMES, Judge.

Appellee, Marshall Durbin and Company, hereinafter called Durbin, brought this suit for damages in the Circuit Court of Mobile County, Alabama, against the appellant/third-party appellee, Water Works and Sewer Board of Prichard, hereinafter called Water Works. Water Works brought a third-party suit for damages against the third-party appellant, Campbell Construction Engineers, Inc., hereinafter called Campbell.

The lower court heard the cause without a jury and entered a judgment in favor of Durbin and against Water Works in the amount of $7,500. The court also entered a judgment in favor of Water Works and against Campbell in the amount of $7,500.

Both Water Works and Campbell appealed. Water Works waived the filing of assignments of error against Durbin and that judgment is therefore affirmed.

Campbell presents to this court nine assignments of error to the effect that the lower court erred in overruling Campbell's demurrer to Water Works' complaint as last amended; that it was error for the trial court to grant Water Works' motion to strike Campbell's plea number five; that it was error to overrule Campbell's motion for a new trial; that the lower court erred in overruling Campbell's objection to a question asked of one of Water Works' witnesses; and, that it was error for the lower court to render judgment in favor of Water Works and against Campbell.

The case arises from foreign matter being found in the water of Durbin's plant on August 15, 1967.

Tendencies of the evidence reveal the following:

Appellee-Durbin was engaged in the chicken processing business. Such operation requires a great deal of water which is used in practically all aspects of the processing procedure, and appellee had discussed his plant's requirement with the Water Works and Sewer Board of the City of Prichard. The city agreed to furnish water and provide it in a manner suitable for use by the appellee.

On the morning of August 14, 1967, it was discovered that the water being used by the plant and supplied by the city contained sand, and, according to some witnesses, a "reddish" color of water and/or foreign material, appearing to be "rust-like." The sand and other material contaminated the chickens being processed and the United States Department of Agriculture Inspection Service shut down the plant because of the contamination. As a result, there was no production of saleable, consumable chickens on that day.

After production was stopped, the fire hydrant in front of appellee's plant and all sources inside the plant were opened and allowed to run in order to flush out the sand.

Appellee-Durbin presented an itemization of damages which it suffered as a result of the shutdown.

The principal question at trial was the origin of the sand. Was it already in the system, or did it get into the system through the new line which Campbell laid?

Campbell had previously entered into a contract with Water Works to lay a 12-inch pipeline approximately a mile and a half long which would provide more water for Durbin as well as boost the water pressure over the entire city of Prichard. Several procedures are required once the pipe is laid, including removing the air, hydrostatic test, chlorination and flushing.

During a hydrostatic test of the line by Campbell, under 150 pounds of pressure per square inch, a blow-out occurred. There was testimony that a piece of pipe about six inches by ten inches had blown out of the top of the pipe, that there was a hole in the ground, and water was coming out. The water was pumped out of the hole and the faulty section of pipe was cut out, removed, and a new piece installed. The hydrostatic test was started over again by Campbell.

Water Works contends that sand got into the pipeline after the blow-out or during replacement of the faulty section; and that the line was not properly flushed afterwards, resulting in the sand problem at appellee's plant.

Campbell urged at trial that the sand and foreign material was already in the system. They presented evidence that a build-up of minerals occurs in water lines called tuberculation or "crud" whereby matter accumulates and, due to too much iron, red water occurs or rustlike matter accumulates.

The assignments of error presented for our review, as noted earlier, may be broadly categorized as either pleading questions or evidentiary questions.

Campbell's assignments of error 1, 4, and 5 urge that the lower court erred in overruling its demurrers to Water Works' complaint as last amended. Campbell contends that Water Works insufficiently alleged breach of contract in its third-party complaint. It argues that Water Works made the statement in each of the four counts of the amended complaint, that a copy of the contract referenced therein was attached, and that Water Works failed to attach a copy of said contract. As a result, Campbell contends the complaint, standing alone, fails to state a cause of action.

Campbell urges that when a complaint does not state a cause of action without the aid of an exhibit not actually appended thereto, the complaint and each count thereof is subject to demurrers.

Pertinent parts of Water Works' complaint as last amended are as follows:

## "COUNT THREE

"Defendant and third-party Plaintiff claims of third-party Defendant the sum of Seven Thousand Five Hundred dollars ($7,500) as damages for this, and heretofore, on, to-wit, the 7th day of April, 1967, third-party Defendant, en-

tered into a written contract with Defendant and third-party Plaintiff, which such contract is in writing, is designated as project 306–P, is attached hereto, hereby referred to, and under and by the terms of which, third-party of [sic] Defendant agreed with Defendant and third-party Plaintiff to undertake and perform certain actions relative to laying water lines in and about the City of Prichard, Alabama, and for a valuable consideration did attempt to lay and install said water lines, including a water line or lines leading to the processing plant of Plaintiff; that under the contract herein referred to third-party Defendant agreed with Defendant and third-party Plaintiff to provide suitable water line or lines for the carrying or transportation of potable water to customers of Defendant and third-party Plaintiff; and third-party Plaintiff and Defendant alleges that Plaintiff was on, to-wit, the 14th day of August, 1967, while said contract was still in full force and effect, a customer of Defendant and third-party Plaintiff, and that at such time, and while said contract was still in full force and effect, third-party Defendant failed or refused to install or provide such water line or lines for the supply of potable water to the customers of Defendant, including Plaintiff, a customer of Defendant at that time, and that as a proximate result and consequence thereof, water which was not potable, but contained deleterious foreign substances was furnished by third-party Defendant to the customer of third-party Plaintiff Defendant, the Plaintiff, with the proximate result and consequence that such foreign deleterious substances contained in such water damaged Defendant and third-party Plaintiff as follows: that the customer, Plaintiff, of Defendant and third-party Plaintiff allegedly lost many hours of its normal operations, was required to have its products inspected, lost many pounds of poultry, lost numerous tons of ice, was re-

quired to inspect, repair and clean its equipment and machines used in its operations and damages by said water furnished by third-party Defendants, and lost profits and good will from its, Plaintiffs, customers; that it was required to pay employment wages to employees unable to work due to work stoppage, to clean numerous chickens or the poultry as a consequence of said foreign deleterious substances in said water, all as the proximate result thereof suit in the amount of Seven Thousand Five Hundred dollars ($7,500) was brought by Plaintiff against Defendant and third-party Plaintiff; wherefore Defendant and third-party Plaintiff asks damages against third-party Defendant for such breach of contract heretofore referred to and claims damages in the amount of Seven Thousand Five Hundred dollars ($7,500)."

■ The initial question presented is whether the complaint without the contract attached sufficiently alleged breach of contract. We particularly note that if a count sufficiently states a cause of action without an exhibit made a part thereof by reference, it is not subject to demurrer on the grounds that the exhibit is not actually appended thereto. Columbia Motors Co. v. Williams, 209 Ala. 640, 96 So. 900.

■ We hold that the failure to attach the contract itself was not fatal since Count Three of the complaint sufficiently alleged a cause of action for breach of contract, and was not demurrable. All that is required, in this instance, in order that a complaint withstand a demurrer, is that the complaint set forth the essential terms of the contract with reasonable precision and with such certainty and particularity as to acquaint and apprise defendant in what particular he has failed to perform. Tennessee Coal, Iron & Railroad Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459; Woodward Iron Co. v. Frazier, 190 Ala. 305, 67 So. 430; Hart v. Bludworth, 49 Ala. 218;

Public National Life Insurance Co. v. Highsmith, 47 Ala.App. 488, 256 So.2d 912. See also, 71 C.J.S. Pleading § 231, pp. 445, 446; 17 C.J.S. Contracts § 544, p. 1177. In this instance, the above count sufficiently met the requirements, and the lower court properly overruled the demurrer of Campbell. Since Count Three sufficiently alleged a cause of action for breach of contract and was not demurrable, we do not feel it necessary to discuss assignments of error relating to Counts One, Two, and Four, as the verdict was general. White v. Jackson, 36 Ala.App. 643, 62 So.2d 477; Automotive Accept. Corp. v. Powell, 45 Ala.App. 596, 234 So.2d 593.

■■ Campbell, by assignment of error 8, says the lower court erred in granting Water Works' motion to strike the Campbell's plea No. 5. We cannot agree. The rule is well settled that it is within the sound judicial discretion of the trial court to permit or refuse amendments to pleadings. Morris v. Brown, 177 Ala. 389, 58 So. 910; Hill v. Bishop, 2 Ala. 320. See 71 C.J.S. Pleading § 281. In this instance, Campbell filed a plea of the general issue in September of 1972. Thereafter, in April of 1973, some seven months after the cause was at issue, Campbell attempted to amend.

In view of the above, we cannot hold the trial court was in error in granting Water Works' motion to strike.

Assignment of error 10 states the trial court erred in overruling Campbell's objection to the following question:

"Q. Well, assuming that sand was there, was the hole big enough for sand to get down into it?

"MR. RILEY: I object to the question. He is assuming a fact that is not in evidence.

.    .    .    .    .    .

"MR. STONE: If your honor please, Mr. Little testified that there was sand there.

"THE COURT: Overrule the objection."

■■ Campbell, who has favored this court with an excellent brief, urges the question was improper because it was not supported by the evidence, and it did not incorporate sufficient facts. It is clear that a hypothetical question is not objectionable because it omits to hypothesize every fact shown by the evidence. The question should, however, incorporate sufficient facts in evidence to fairly justify the formation of an expert opinion on a material issue in the case. The frame and substance of hypothetical questions to expert witnesses are matters committed to the discretion of the trial court. The decision of the trial court will not be disturbed unless there is a showing of abuse of discretion. See Lehigh Portland Cement Co. v. Dobbins, 282 Ala. 513, 213 So.2d 246; Sovereign Camp W. O. W. v. Davis, 242 Ala. 235, 5 So.2d 480; Louisville and Nashville Railroad Co. v. Self, 45 Ala.App. 530, 233 So.2d 90.

■ The record reveals that Mr. T. H. Little, inspector for the consulting engineers, and a witness for Water Works, testified that the nature of the ground where the blow-out occurred was ". . . clay. *Sand* clay." (Emphasis added). He further testified in reference to his opinion whether foreign matter could get into the line, "that some *sand* could get into that pipe . . ." (Emphasis added). The witness mentions that, "*Sand* could still fall in the hole . . .," and that "the *sand* is not apt to get in until . . ." (Emphasis added). We are of the opinion that these prior references to sand, in conjunction with testimony that a blow-out occurred (where the pipe blows up during a pressure test), make the contested question proper, as it was based upon evidence in the case. Accordingly, the trial court did not err in overruling Campbell's objection to the question.

Campbell, by assignment of error 9, urges that the lower court erred in denying

his motion for a new trial. The main contentions of this argument are to the effect that the trial court's finding was not supported by the evidence and that such finding was based upon mere conjecture that the foreign substance found in the water supplied to the plant had come from the new 12-inch line as opposed to the previously existing lines.

■ It is clear in Alabama that findings of fact based on conjecture cannot be upheld, and conjecture should never be the basis of a verdict or judgment. See: McClinton v. McClinton, 258 Ala. 542, 63 So.2d 594; Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505; Southern Railway Co. v. Dickson, 211 Ala. 481, 100 So. 665; 9 Ala.Dig. Evidence ☞597.

The court, in Southern Railway Co. v. Dickson, *supra,* stated:

"As this court has often declared, findings of fact based on conjecture merely cannot be upheld. .Southworth, Adm'x, v. Shea, 131 Ala. 419, 30 So. 774; Miller-Brent Lbr. Co. v. Douglas, 167 Ala. 286, 52 So. 414; John v. Birmingham Realty Co., 172 Ala. 603, 55 So. 801; Carlisle v. C. of G. Ry. Co., 183 Ala. 195, 62 So. 759; Dorman's Case [St. Louis & S. F. R. Co. v. Dorman], supra [205 Ala. 609, 89 So. 70]. As said in Southworth, Adm'x, v. Shea:

" 'Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.'

"But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it;

yet, if the evidence is without selective application to any one of them, they remain conjectures only. *On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."* (Emphasis added) (211 Ala. at 486, 100 So.2d at 669)

■ After a careful search of the record, we are of the opinion that there is evidence which points to the theory of Water Works that sand got into the newly constructed 12-inch line after the blow-out. We particularly note the following testimony:

(Mr. Little on direct examination, Tr. 206)

"Q. When that explosion took place or blow up, whatever you want to call it, uh, would, in your opinion, foreign matter get into the line?

"A. You want my opinion on it?

"Q. Yes, sir, that's what I asked.

"A. Well, it's possible, but——.

. . . . . .

"THE COURT: He said it's possible, but. But what?

"A. He asked for my opinion and that's what I'm going to give him. Uh, it's possible, but highly improbable.

. . . . .

"A. . . . it's possible that some sand could get into that pipe in the process of surgitive pumping, . . .

. . . . . .

"Q. . . . So, would there be anything to—would there be anything done to prevent sand from caving in and falling in to [sic] that hole?

"A. Sand could still fall in the hole, that's right.

"Q. Into this hole in the pipe, that's what I'm talking about.

"A. Possibly."

(Mr. Harris on direct examination, Tr. 238)

"Q. And you are familiar in general with the property of sand that if given the right emphasis by gravity it will fall down, won't it. I [sic] won't fall up. So, if there was a hole in the line it would fall into the line, is that correct?

"A. True."

(Mr. Goodwin on direct examination, Tr. 259)

"Q. Is there material around City Hall which would have fallen into this hole or was the hole big enough or what?

"A. Yes, you [sic] going to get a certain amount of that anyway in there, you really are."

(Mr. Cookson on cross-examination, Tr. 280)

"Q. Would that create a breach in the line and if there was sand around it could drift into or fall into the line, which was below it?

"A. Yes, sir."

Such testimony meets the requirements of *Southern Railway, supra,* as being evidence which points to a theory of causation and, in conjunction with other testimony, indicated a logical sequence of cause and effect, even though the conclusion reached by the trial court might not have been the conclusion reached by this court. Accordingly, we hold that more than mere conjecture alone was presented as a basis for determination.

As to Campbell's argument that there was no breach of contract shown, we cannot agree. We have already discussed the sufficiency of the complaint and held it to sufficiently allege a cause of action for breach of contract. Furthermore, we note that the contract in question was intro-duced into evidence without objection, and various sections of the contract require scrutiny.

Under Section 11, Specifications For Water Mains, we note the following:

"11.02 WORK INCLUDED:

"(a) All labor, equipment and material necessary to complete the work as stipulated herein. The Contractor shall . . . remove surplus excavated material; clean the site of the work; . . ."

"11.04 HANDLING PIPE AND ACCESSORIES:

"(e) *Pipe Kept Clean:* The Interior of all pipe, fittings, and other accessories shall be kept free from dirt and foreign matter at all times."

"11.07 PIPE LAYING:

"(c) *Pipe Kept Clean:* All foreign matter or dirt shall be removed from the inside of the pipe before it is lowered into its position in the trench, and it shall be kept clean by approved means during and after laying."

"11.18 CHLORINATION OF COMPLETED PIPE LINE:

"(b) *Preliminary Flushing:* Prior to chlorination, all dirt and foreign matter shall be removed by a thorough flushing through the hydrants, or by other approved means . . . This shall be done after the pressure test is completed."

■ In view of the above contractual provisions, we cannot say that the evidence presented was insufficient to find a breach of contract as a result of sand coming into the water system from the construction of the new line or the "blow-out."

■ We must also apply several well known principles of law to the determinations at hand. Where evidence is heard *ore tenus* by the trial court, every pre-

sumption will be indulged in favor of trial court's findings of fact, which will not be disturbed unless palpably wrong. Baldwin v. Odom, 291 Ala. 129, 278 So.2d 713.

▄ The refusal of the lower court to grant a new trial on the ground that the verdict is contrary to the weight of the evidence will not be reversed unless, after allowing all reasonable presumptions as to its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court reviewing the cause on appeal that it is wrong and unjust. Alabama Great Southern Railroad v. Evans, 288 Ala. 25, 256 So.2d 861; Johnson v. Hodge, 291 Ala. 142, 279 So.2d 123; Shepherd v. Southern Railway Co., 288 Ala. 50, 256 So.2d 883; Cobb v. Malone, 92 Ala. 630, 9 So. 738.

After carefully examining the record before us, and applying the above mentioned principles of law, we hold Campbell's assignment of error 9 is not well taken.

Assignment of error 11 asserts that no evidence was presented upon which the lower court could compute damages and, as a result, the lower court erred in rendering a judgment in favor of Water Works and against Campbell for $7,500.

As noted earlier, Water Works filed a third-party complaint against third-party defendant in accord with Ala.Code, Tit. 7, § 259(2) (1940), which provides in part as follows:

"At any time after commencement of a civil action, a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a party not a party to the action who is, or may be, liable to such third-party plaintiff for all, or part, of the plaintiff's claim against him. . . ."

We note that the Alabama Third-Party Practice Act was substantially similar to Rules 13 and 14 of the Federal Rules of Civil Procedure and the act was patterned after the federal rules. Ex parte Huguley Water System, 282 Ala. 633, 213 So.2d 799; Otts v. Gray, 287 Ala. 685, 255 So.2d 26. (The newly adopted Alabama Rules of Civil Procedure are also patterned after the Federal Rules of Civil Procedure.)

▄ One of the purposes of allowing this third-party practice is to avoid multiple suits. This allows an entire controversy to be disposed of in one action, thereby saving the time and cost of duplication of evidence. It also makes for consistent results from identical or similar evidence, and does away with the serious handicap to the defendant of a time difference between the judgment against him and the judgment in his favor against the party liable over to him. See: 3 Moore's Federal Practice § 14.04 (2d ed. 1968).

We note that one of the main considerations of both Federal Rules of Civil Procedure 14 and Ala.Code, Tit. 7, § 259(2) (1940), is that the original defendant as third-party plaintiff may join a party not a party to the action who is, or may be, liable to such third-party plaintiff for all or part of the plaintiff's claim against him. The third-party defendant must be liable under some theory of law or contract to the defendant for all or part of the plaintiff's recovery against the defendant. This is shown by the complaint, which should allege how the third-party defendant will be liable over to the third-party plaintiff for all or part of the original plaintiff's claim against the original defendant/third-party plaintiff. See: Ex parte Huguley Water System, *supra*; Bush v. Godard, 286 Ala. 370, 240 So.2d 122; 6 Wright & Miller Federal Practice and Procedure: Civil § 1453; 67 C.J.S. Parties § 74 j., p. 1033; 28 Alabama Lawyer, January '67, Third Party Practice in Alabama, p. 64.

▄ Upon review of the complaint by Water Works, we hold that the allegations therein sufficiently show the possibility of resulting liability of Campbell from a finding of liability in favor of Durbin against Water Works. Water Works sufficiently alleges breach of contract and damages which would result from such finding of

liability. Therefore, in the instant case, the damages proven by Durbin against Water Works resulted in damages to Water Works of $7,500 and such amount was the amount of damages for which Campbell was liable to Water Works.

Accordingly, upon consideration of the above principles and upon application of the well established guidelines as to findings of the trial court *ore tenus,* we find no abuse of discretion by the lower court in determining damages and rendering a judgment for $7,500 in favor of appellant/third-party appellee-Water Works and against third-party defendant-Campbell.

All assignments of error having been considered, this court finds no reversible error and the case is due to be affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.